ORTEGA-RODRIGUEZ *v.* UNITED STATES

No. 91–7749.   Argued December 7, 1992—Decided March 8, 1993

STEVENS, J., delivered the opinion of the Court, in which BLACKMUN, SCALIA, KENNEDY, and SOUTER, JJ., joined. REHNQUIST, C. J., filed a dissenting opinion, in which WHITE, O'CONNOR, and THOMAS, JJ., joined, *post*, p. 252.

*James R. Gailey* argued the cause for petitioner. With him on the briefs were *Stewart G. Abrams* and *Paul M. Rashkind.*

*Amy L. Wax* argued the cause for the United States. With her on the brief were *Solicitor General Starr, Assistant Attorney General Mueller,* and *Deputy Solicitor General Bryson.*

JUSTICE STEVENS delivered the opinion of the Court.

In *United States* v. *Holmes,* 680 F. 2d 1372, 1373 (1982), cert. denied, 460 U. S. 1015 (1983), the Court of Appeals for the Eleventh Circuit held that "a defendant who flees after conviction, but before sentencing, waives his right to appeal from the conviction unless he can establish that his absence was due to matters completely beyond his control." Relying on that authority, and without further explanation, the court dismissed petitioner's appeal.[1] Because we have not pre-

---

[1] The Court of Appeals order merely stated that the Government's "motion to dismiss is GRANTED," without actually citing *Holmes.* App. 78. Because the Government's motion to dismiss, *id.,* at 68–71, relied entirely on *Holmes* and on *United States* v. *London,* 723 F. 2d 1538 (CA11), cert. denied, 467 U. S. 1228 (1984), which followed *Holmes,* we construe the Court of Appeals order as a routine application of the *Holmes* rule.

viously considered whether a defendant may be deemed to forfeit his right to appeal by fleeing while his case is pending in the district court, though he is recaptured before sentencing and appeal, we granted certiorari.    504 U. S. 984 (1992).

## I

In the early evening of November 7, 1988, a Customs Service pilot was patrolling the Cay Sal Bank area, located midway between Cuba and the Florida Keys.    Approximately 30 miles southwest of Cay Sal, the pilot observed a low-flying aircraft circling over a white boat and dropping bales.    The boat, described by the pilot as 40 to 50 feet in length, was circling with the plane and retrieving the bales from the water as they dropped.    Because the Customs Service plane was flying at an altitude of 2,500 feet, and visibility was less than optimal, the pilot was unable to identify the name of the boat.    *United States* v. *Mieres-Borges,* 919 F. 2d 652, 654–655 (CA11 1990), cert. denied, 499 U. S. 980 (1991); Report and Recommendation in *United States* v. *Ortega-Rodriguez,* No. 88–10035–CR–KING (SD Fla., Feb. 23, 1989).

The following morning, another Customs Service pilot found the *Wilfred,* a boat resembling the one spotted approximately 12 hours earlier.    This boat, located just off the beach of Cay Sal, was described as a 30- to 40-foot sportfishing vessel.    Upon making this discovery, the pilot first flew to the drop point identified the night before, 30 miles away, and found no activity.    Returning to Cay Sal, he found a number of bales stacked on the beach, and the *Wilfred* underway and headed toward Cuba.

The pilot alerted the captain of a Coast Guard cutter, who intercepted, boarded, and searched the *Wilfred.*    He found no narcotics, weapons, or other incriminating evidence on the boat.    Nevertheless, the three members of the crew failed to convince the Coast Guard that they were fishing for dolphin, although a large number of similar vessels frequently do so in the area.    *Mieres-Borges,* 919 F. 2d, at 655–657, 659–660.

Petitioner is one of the three crew members arrested, tried, and convicted of possession with intent to distribute, and conspiring to possess with intent to distribute, over five kilograms of cocaine. After the trial, the District Court set June 15, 1989, as the date for sentencing. Petitioner did not appear and was sentenced *in absentia* to a prison term of 19 years and 7 months, to be followed by 5 years of supervised release.[2] Though petitioner's codefendants appealed their convictions and sentences, no appeal from the judgment was filed on petitioner's behalf.

The District Court issued a warrant for petitioner's arrest, and 11 months later, on May 24, 1990, he was apprehended. Petitioner was indicted and found guilty of contempt of court[3] and failure to appear.[4] Pursuant to the Sentencing

---

[2] No. 88–10035–CR–KING (SD Fla., June 23, 1989).

[3] Title 18 U. S. C. § 401(3) provides: "A court of the United States shall have power to punish by fine or imprisonment, at its discretion, such contempt of its authority, and none other, as . . . [d]isobedience or resistance to its lawful writ, process, order, rule, decree, or command."

[4] Title 18 U. S. C. § 3146 provides, in relevant part:

"(a) OFFENSE.—Whoever, having been released under this chapter knowingly—

"(1) fails to appear before a court as required by the conditions of release; or

"(2) fails to surrender for service of sentence pursuant to a court order; shall be punished as provided in subsection (b) of this section.

"(b) PUNISHMENT.—(1) The punishment for an offense under this section is—

"(A) if the person was released in connection with a charge of, or while awaiting sentence, surrender for service of sentence, or appeal or certiorari after conviction for—

"(i) an offense punishable by death, life imprisonment, or imprisonment for a term of 15 years or more, a fine under this title or imprisonment for not more than ten years, or both;

"(ii) an offense punishable by imprisonment for a term of five years or more, a fine under this title or imprisonment for not more than five years, or both;

"(iii) any other felony, a fine under this title or imprisonment for not more than two years, or both; or

Reform Act of 1984, 18 U. S. C. § 3551 *et seq.,* the District Court imposed a prison sentence of 21 months, to be served after the completion of the sentence on the cocaine offenses and to be followed by a 3-year term of supervised release.[5]

While petitioner was under indictment after his arrest, the Court of Appeals disposed of his two codefendants' appeals. The court affirmed one conviction, but reversed the other because the evidence was insufficient to establish guilt beyond a reasonable doubt.[6] Also after petitioner was taken into custody, his attorney filed a "motion to vacate sentence and for resentencing," as well as a motion for judgment of acquittal. The District Court denied the latter but granted the former, vacating the judgment previously entered on the cocaine convictions.[7] The District Court then resentenced

---

"(iv) a misdemeanor, a fine under this chapter or imprisonment for not more than one year, or both; and

"(B) if the person was released for appearance as a material witness, a fine under this chapter or imprisonment for not more than one year, or both.

"(2) A term of imprisonment imposed under this section shall be consecutive to the sentence of imprisonment for any other offense.

"(c) AFFIRMATIVE DEFENSE.—It is an affirmative defense to a prosecution under this section that uncontrollable circumstances prevented the person from appearing or surrendering, and that the person did not contribute to the creation of such circumstances in reckless disregard of the requirement to appear or surrender, and that the person appeared or surrendered as soon as such circumstances ceased to exist."

[5] App. 58–63.

[6] *United States* v. *Mieres-Borges,* 919 F. 2d 652 (CA11 1990), cert. denied, 499 U. S. 980 (1991). The difference in dispositions is explained by a post-arrest statement admitted against only one defendant, 919 F. 2d., at 660–661, though the dissenting judge viewed the evidence as insufficient as to both appealing defendants, *id.,* at 663–664. Petitioner represents that he is situated identically to the codefendant whose conviction was reversed, with nothing in the record that would support a distinction between their cases. The Government does not take issue with that representation, but maintains that the evidence is sufficient to support all three convictions. Brief for United States 28, n. 7.

[7] App. 10.

petitioner to a prison term of 15 years and 8 months, to be followed by a 5-year period of supervised release.[8] Petitioner filed a timely appeal from that final judgment.[9]

On appeal, petitioner argued that the same insufficiency of the evidence rationale underlying reversal of his codefendant's conviction should apply in his case, because precisely the same evidence was admitted against the two defendants. Without addressing the merits of this contention, the Government moved to dismiss the appeal. The Government's motion was based entirely on the fact that petitioner had become a fugitive after his conviction and before his initial sentencing, so that "[u]nder the holding in *Holmes*, he cannot now challenge his 1989 conviction for conspiracy and possession with intent to distribute cocaine."[10] In a *per curiam* order, the Court of Appeals granted the motion to dismiss.

II

It has been settled for well over a century that an appellate court may dismiss the appeal of a defendant who is a fugitive from justice during the pendency of his appeal. The Supreme Court applied this rule for the first time in *Smith v. United States*, 94 U. S. 97 (1876), to an escaped defendant who remained at large when his petition arose before the Court. Under these circumstances, the Court explained, there could be no assurance that any judgment it issued

---

[8] *Id.*, at 51–56.

[9] *Id.*, at 57. This sequence of events makes petitioner's case somewhat unusual. Had the District Court denied petitioner's motion for resentencing, petitioner would have been barred by applicable time limits from appealing his initial sentence and judgment. Petitioner was able to file a timely appeal only because the District Court granted his motion to resentence. Entry of the second sentence and judgment, from which petitioner noticed his appeal, is treated as the relevant "sentencing" for purposes of this opinion. We have no occasion here to comment on the propriety of either the District Court's initial decision to sentence *in absentia*, or its subsequent decision to resentence.

[10] *Id.*, at 70–71.

would prove enforceable. The Court concluded that it is "clearly within our discretion to refuse to hear a criminal case in error, unless the convicted party, suing out the writ, is where he can be made to respond to any judgment we may render." *Ibid.* On two subsequent occasions, we gave the same rationale for dismissals based on the fugitive status of defendants while their cases were pending before our Court. *Bohanan* v. *Nebraska,* 125 U. S. 692 (1887); *Eisler* v. *United States,* 338 U. S. 189 (1949).[11]

Enforceability is not, however, the only explanation we have offered for the fugitive dismissal rule. In *Molinaro* v. *New Jersey,* 396 U. S. 365, 366 (1970), we identified an additional justification for dismissal of an escaped prisoner's pending appeal:

> "No persuasive reason exists why this Court should proceed to adjudicate the merits of a criminal case after the convicted defendant who has sought review escapes from the restraints placed upon him pursuant to the conviction. While such an escape does not strip the case of its character as an adjudicable case or controversy, we believe it disentitles the defendant to call upon the resources of the Court for determination of his claims."

As applied by this Court, then, the rule allowing dismissal of fugitives' appeals has rested in part on enforceability concerns, and in part on a "disentitlement" theory that construes a defendant's flight during the pendency of his appeal as tantamount to waiver or abandonment.

---

[11] The dissenting Justices in *Eisler,* noting that the case was not rendered moot by Eisler's escape, believed that the Court should have exercised its discretion to decide the merits in light of the importance of the issue presented. See 338 U. S., at 194 (Murphy, J., dissenting); *id.,* at 195 (Jackson, J., dissenting). In *United States* v. *Sharpe,* 470 U. S. 675 (1985), despite the respondent's fugitive status, the Court declined to remand the case to the Court of Appeals with directions to dismiss, and proceeded to decide the merits. *Id.,* at 681, n. 2. See also *id.,* at 688 (BLACKMUN, J., concurring); *id.,* at 721–723 (STEVENS, J., dissenting).

That ensuring enforceability is not the sole rationale for fugitive dismissals is also evident from our review of state provisions regarding escaped prisoners' pending appeals. In *Allen* v. *Georgia*, 166 U. S. 138 (1897), we upheld not only a state court's dismissal of a fugitive's appeal, but also its refusal to reinstate the appeal after the defendant's recapture, when enforceability would no longer be at issue. We followed *Allen* in *Estelle* v. *Dorrough*, 420 U. S. 534 (1975), upholding the constitutionality of a Texas statute providing for automatic appellate dismissal when a defendant escapes during the pendency of his appeal, unless the defendant voluntarily returns within 10 days. Although the defendant in *Estelle* had been recaptured before his appeal was considered and dismissed, resolving any enforceability problems, there were, we held, other reasons for dismissal. Referring to our own dismissal in *Molinaro*, we found that the state statute served "similar ends . . . . It discourages the felony of escape and encourages voluntary surrenders. It promotes the efficient, dignified operation of the Texas Court of Criminal Appeals." 420 U. S., at 537 (footnotes omitted).

*Estelle* went on to consider whether the Texas statute was irrational because it applied only to prisoners with appeals pending when they fled custody. Citing the "peculiar problems posed by escape of a prisoner during the ongoing appellate process," *id.*, at 542, n. 11, we concluded that it was not. The distinct concerns implicated by an escape pending appeal justified a special rule for such appeals:

> "Texas was free to deal more severely with those who simultaneously invoked the appellate process and escaped from its custody than with those who first escaped from its custody, returned, and then invoked the appellate process within the time permitted by law. While each class of prisoners sought to escape, the first did so in the very midst of their invocation of the appellate process, while the latter did so before returning to custody and commencing that process. If Texas is free to

adopt a policy which deters escapes by prisoners, as all of our cases make clear that it is, it is likewise free to impose more severe sanctions on those whose escape is reasonably calculated to disrupt the very appellate process which they themselves have set in motion." *Id.*, at 541–542.

Thus, our cases consistently and unequivocally approve dismissal as an appropriate sanction when a prisoner is a fugitive during "the ongoing appellate process." Moreover, this rule is amply supported by a number of justifications. In addition to addressing the enforceability concerns identified in *Smith* v. *United States*, 94 U. S. 97 (1876), and *Bohanan* v. *Nebraska*, 125 U. S. 692 (1887), dismissal by an appellate court after a defendant has fled its jurisdiction serves an important deterrent function and advances an interest in efficient, dignified appellate practice. *Estelle*, 420 U. S., at 537. What remains for our consideration is whether the same rationales support a rule mandating dismissal of an appeal of a defendant who flees the jurisdiction of a district court, and is recaptured before he invokes the jurisdiction of the appellate tribunal.

### III

In 1982, the Government persuaded the Eleventh Circuit that our reasoning in *Molinaro* should be extended to the appeal of a "former fugitive," returned to custody prior to sentencing and notice of appeal.[12] The Court of Appeals

---

[12] For present purposes, the time of sentencing and the time of appeal may be treated together, as the two dates normally must occur within 10 days of one another. See Fed. Rule App. Proc. 4(b); see also n. 9, *supra; Torres* v. *Oakland Scavenger Co.*, 487 U. S. 312, 314–315 (1988) (discussing mandatory nature of Rule 4 time limits). Cases in which a defendant flees during that 10-day interval will be resolved easily: If the defendant fails to file a timely appeal, his case concludes; if the defendant's attorney files an appeal for him in his absence, the appeal will be subject to dismissal under straightforward application of *Smith* and *Molinaro*. Should a defendant flee after sentencing but return before appeal—in other words,

recognized in *Holmes* that all of the cases on which the Government relied were distinguishable, "because each involved a defendant who fled *after* filing a notice of appeal." 680 F. 2d, at 1373 (emphasis added). The court was satisfied, however, that the disentitlement rationale of *Molinaro* "is equally forceful whether the defendant flees before or after sentencing." 680 F. 2d, at 1374. The Eleventh Circuit also expressed concern that absent dismissal, the Government might be prejudiced by delays in proceedings resulting from presentencing escapes.[13]

The rule of *Holmes* differs from that applied in *Molinaro* in three key respects. First, of course, the *Holmes* rule reaches defendants who flee while their cases are before district courts, as well as those who flee while their appeals are pending. Second, the *Holmes* rule, unlike the rule of *Molinaro*, will not mandate dismissal of an entire appeal whenever it is invoked. As the Eleventh Circuit explained, because flight cannot fairly be construed as a waiver of appeal from errors occurring after recapture, defendants who flee presentencing retain their right to appeal *sentencing* errors, though they lose the right to appeal their *convictions*. 680 F. 2d, at 1373.[14] Finally, as announced in *Holmes* and

---

should his period of fugitivity begin after sentencing and end less than 10 days later—then a timely filed appeal would be subject to the principles we apply today.

[13] The court reasoned that the right of appeal, purely a creature of statute, may be waived by failure to file a timely notice of appeal "or by abandonment through flight which may postpone filing a notice of appeal for years after conviction." *Holmes*, 680 F. 2d, at 1373–1374. The court then explained: "Such untimeliness would make a meaningful appeal impossible in many cases. In case of a reversal, the government would obviously be prejudiced in locating witnesses and retrying the case." *Id.*, at 1374.

[14] "We hold that a defendant who flees after conviction, but before sentencing, waives his right to appeal from the conviction unless he can establish that his absence was due to matters completely beyond his control. *Such a defendant does not waive his right to appeal from any alleged errors connected to his sentencing.*" *Id.*, at 1373 (emphasis added).

applied in this case, the Eleventh Circuit rule appears to call for automatic dismissal, rather than an exercise of discretion. See n. 11, *supra*.

In our view, the rationales that supported dismissal in cases like *Molinaro* and *Estelle* should not be extended as far as the Eleventh Circuit has taken them. Our review of rules adopted by the courts of appeals in their supervisory capacity is limited in scope, but it does demand that such rules represent reasoned exercises of the courts' authority. See *Thomas* v. *Arn*, 474 U. S. 140, 146–148 (1985). Accordingly, the justifications we have advanced for allowing appellate courts to dismiss pending fugitive appeals all assume some connection between a defendant's fugitive status and the appellate process, sufficient to make an appellate sanction a reasonable response.[15] These justifications are necessarily attenuated when applied to a case in which both flight and recapture occur while the case is pending before the district court, so that a defendant's fugitive status at no time coincides with his appeal.

There is, for instance, no question but that dismissal of a former fugitive's appeal cannot be justified by reference to the enforceability concerns that animated *Smith* v. *United States*, 94 U. S. 97 (1876), and the cases that followed. A defendant returned to custody before he invokes the appellate process presents no risk of unenforceability; he is within control of the appellate court throughout the period of appeal and issuance of judgment. Cf. *United States* v. *Gordon*, 538 F. 2d 914, 915 (CA1 1976) (dismissing pending appeal of fugitive because it is "unlikely that [the] convicted party will respond to an unfavorable decision").

---

[15] The reasonableness standard of *Thomas* v. *Arn*, 474 U. S. 140 (1985), is not, however, the only reason we require some connection between the appellate process and an appellate sanction. As the dissent notes, *post*, at 254, n. 2, Federal Rule of Appellate Procedure 47, which authorizes the promulgation of rules by the courts of appeals, limits that authority to rules "governing [the] practice" before those courts.

Similarly, in many cases, the "efficient . . . operation" of the appellate process, identified as an independent concern in *Estelle*, 420 U. S., at 537, will not be advanced by dismissal of appeals filed after former fugitives are recaptured. It is true that an escape may give rise to a "flurry of extraneous matters," requiring that a court divert its attention from the merits of the case before it. *United States* v. *Puzzanghera*, 820 F. 2d 25, 26 (CA1), cert. denied, 484 U. S. 900 (1987). The court put to this "additional trouble," 820 F. 2d, at 26, however, at least in the usual course of events, will be the court before which the case is pending at the time of escape. When an appeal is filed after recapture, the "flurry," along with any concomitant delay, likely will exhaust itself well before the appellate tribunal enters the picture.[16]

Nor does dismissal of appeals filed after recapture operate to protect the "digni[ty]" of an appellate court. Cf. *Estelle*, 420 U. S., at 537. It is often said that a fugitive "flouts" the authority of the court by escaping, and that dismissal is an appropriate sanction for this act of disrespect. See, *e. g.*, *United States* v. *DeValle*, 894 F. 2d 133, 138 (CA5 1990); *United States* v. *Persico*, 853 F. 2d 134, 137–138 (CA2 1988);

---

[16] This case well illustrates the way in which preappeal flight may delay district court, but not appellate court, proceedings. Petitioner's sentencing was scheduled for June 1989. Because he fled, however, and because the District Court resentenced him upon his return to custody, his final sentence was not entered until January 1991. *Supra*, at 237–238. Accordingly, petitioner's 11-month period of fugitivity delayed culmination of the *District* Court proceedings by as much as 19 months.

In the appellate court, on the other hand, the timing of proceedings was unaffected by petitioner's flight. Had petitioner filed his notice of appeal before he fled, of course, then the Court of Appeals might have been required to reschedule an already docketed appeal, causing some delay. But here, petitioner filed his notice of appeal only after he was returned to custody, and the Court of Appeals was therefore free to docket his case pursuant to its regular schedule and at its convenience. In short, a lapse of time that precedes invocation of the appellate process does not translate, by itself, into delay borne by the appellate court.

*Ali* v. *Sims*, 788 F. 2d 954, 958–959 (CA3 1986); *United States* v. *London*, 723 F. 2d 1538, 1539 (CA11), cert. denied, 467 U. S. 1228 (1984). Indeed, the premise of *Molinaro*'s disentitlement theory is that "the fugitive from justice has demonstrated such disrespect for the legal processes that he. has no right to call upon the court to adjudicate his claim." *Ali* v. *Sims*, 788 F. 2d, at 959; see *Molinaro*, 396 U. S., at 366. We have no reason here to question the proposition that an appellate court may employ dismissal as a sanction when a defendant's flight operates as an affront to the dignity of the court's proceedings.

The problem in this case, of course, is that petitioner, who fled before sentencing and was recaptured before appeal, flouted the authority of the District Court, not the Court of Appeals. The contemptuous disrespect manifested by his flight was directed at the District Court, before which his case was pending during the entirety of his fugitive period. Therefore, under the reasoning of the cases cited above, it is the District Court that has the authority to defend its own dignity, by sanctioning an act of defiance that occurred solely within its domain. See *United States* v. *Anagnos*, 853 F. 2d 1, 2 (CA1 1988) (declining to follow *Holmes* because former fugitive's "misconduct was in the district court, and should affect consequences in that court, not in ours").

We cannot accept an expansion of this reasoning that would allow an appellate court to sanction by dismissal any conduct that exhibited disrespect for any aspect of the judicial system, even where such conduct has no connection to the course of appellate proceedings. See *supra*, at 244, and n. 15. Such a rule would sweep far too broadly, permitting, for instance, this Court to dismiss a petition solely because the petitioner absconded for a day during district court proceedings, or even because the petitioner once violated a condition of parole or probation. None of our cases calls for such a result, and we decline today to adopt such an

approach.[17]   Accordingly, to the extent that the *Holmes* rule rests on the premise that *Molinaro*'s disentitlement theory by itself justifies dismissal of an appeal filed after a former fugitive is returned to custody, see 680 F. 2d, at 1374, it cannot be sustained.

Finally, *Estelle*'s deterrence rationale, 420 U. S., at 537, offers little support for the Eleventh Circuit rule.   Once jurisdiction has vested in the appellate court, as in *Estelle*, then any deterrent to escape must flow from appellate consequences, and dismissal may be an appropriate sanction by which to deter.   Until that time, however, the district court is quite capable of defending its own jurisdiction.   While a case is pending before the district court, flight can be deterred with the threat of a wide range of penalties available to the district court judge.   See *Katz* v. *United States*, 920 F. 2d 610, 613 (CA9 1990) (when defendant is before district court, "disentitlement doctrine does not stand alone as a deterrence to escape").

Moreover, should this deterrent prove ineffective, and a defendant flee while his case is before a district court, the district court is well situated to impose an appropriate punishment.   While an appellate court has access only to the blunderbuss of dismissal, the district court can tailor a more finely calibrated response.   Most obviously, because flight is a separate offense punishable under the Criminal Code, see nn. 3–4, *supra*, the district court can impose a separate sentence that adequately vindicates the public interest in deter-

---

[17] Even the Eleventh Circuit, we note, seems unprepared to take such an extreme position.   If appellate dismissal were indeed an appropriate sanction for all acts of judicial defiance, then there would be no reason to exempt sentencing errors from the scope of the *Holmes* rule.   See 680 F. 2d, at 1373; *supra*, at 243.   Whether or not *Holmes'* distinction between appeals from sentencing errors and appeals from convictions is logically supportable, see *United States* v. *Anagnos*, 853 F. 2d 1, 2 (CA1 1988) (questioning logic of distinction), it reflects an acknowledgment by the Eleventh Circuit that the sanction of appellate dismissal should not be wielded indiscriminately as an all-purpose weapon against defendant misconduct.

ring escape and safeguards the dignity of the court.   In this case, for instance, the District Court concluded that a term of imprisonment of 21 months, followed by three years of supervised release, would serve these purposes.[18]   If we assume that there is merit to petitioner's appeal, then the Eleventh Circuit's dismissal is tantamount to an additional punishment of 15 years for the same offense of flight.   Cf. *United States* v. *Snow*, 748 F. 2d 928 (CA4 1984).[19]   Our reasoning in *Molinaro* surely does not compel that result.

Indeed, as Justice Stewart noted in his dissenting opinion in *Estelle* v. *Dorrough*, 420 U. S., at 544–545, punishment by appellate dismissal introduces an element of arbitrariness and irrationality into sentencing for escape.[20]   Use of the dismissal sanction as, in practical effect, a second punishment for a defendant's flight is almost certain to produce the kind of disparity in sentencing that the Sentencing Reform Act of 1984[21] and the Sentencing Guidelines were intended to eliminate.[22]

---

[18] See *supra*, at 237–238.

[19] "The Court is not condoning [defendant's] flight from justice.   However, it presumes his actions constitute an independent crime, *i. e.*, 'escape from custody.'   We refrain from punishing [defendant] twice by dismissing his appeal." *United States* v. *Snow*, 748 F. 2d, at 930, n. 3.

[20] "[T]he statute imposes totally irrational punishments upon those subject to its application.   If an escaped felon has been convicted in violation of law, the loss of his right to appeal results in his serving a sentence that under law was erroneously imposed.   If, on the other hand, his trial was free of reversible error, the loss of his right to appeal results in no punishment at all.   And those whose appeals would have been reversed if their appeals had not been dismissed serve totally disparate sentences, dependent not upon the circumstances of their escape, but upon whatever sentences may have been meted out under their invalid convictions." *Estelle*, 420 U. S., at 544.

[21] 18 U. S. C. § 3551 *et seq.*; 28 U. S. C. §§ 991–998.

[22] See generally *Mistretta* v. *United States*, 488 U. S. 361 (1989) (discussing purpose of Sentencing Reform Act and Sentencing Guidelines).

The dissent relies heavily on the legitimate interests in avoiding the "specter of inconsistent judgments," as well as in preserving "precious appellate resources." *Post*, at 255.   It must be remembered, however, that the reason appellate resources are precious is that they serve the

Accordingly, we conclude that while dismissal of an appeal pending while the defendant is a fugitive may serve substantial interests, the same interests do not support a rule of dismissal for all appeals filed by former fugitives, returned to custody before invocation of the appellate system. Absent some connection between a defendant's fugitive status and his appeal, as provided when a defendant is at large during "the ongoing appellate process," *Estelle*, 420 U. S., at 542, n. 11, the justifications advanced for dismissal of fugitives' pending appeals generally will not apply.

We do not ignore the possibility that some actions by a defendant, though they occur while his case is before the district court, might have an impact on the appellate process sufficient to warrant an appellate sanction. For that reason, we do not hold that a court of appeals is entirely without authority to dismiss an appeal because of fugitive status predating the appeal. For example, the Eleventh Circuit, in formulating the *Holmes* rule, expressed concern that a long escape, even if ended before sentencing and appeal, may so delay the onset of appellate proceedings that the Government would be prejudiced in locating witnesses and presenting evidence at retrial after a successful appeal. *Holmes*, 680 F. 2d, at 1374; see also *United States* v. *Persico*, 853 F. 2d, at 137. We recognize that this problem might, in some instances, make dismissal an appropriate response. In the class of appeals premised on insufficiency of the evidence, however, in which petitioner's appeal falls, retrial is not permitted in the event of reversal, and this type of prejudice to the Government will not serve as a rationale for dismissal.

Similarly, a defendant's misconduct at the district court level might somehow make "meaningful appeal impossible," *Holmes*, 680 F. 2d, at 1374, or otherwise disrupt the appellate process so that an appellate sanction is reasonably imposed.

purpose of administering evenhanded justice. In this case, it is the dissent's proposed disposition that would produce inconsistent judgments, as petitioner served a 15-year sentence while his codefendant's conviction was reversed for insufficiency of evidence.

The appellate courts retain the authority to deal with such cases, or classes of cases,[23] as necessary. Here, for instance, petitioner's flight prevented the Court of Appeals from consolidating his appeal with those of his codefendants, which we assume would be its normal practice. See *United States v. Mieres-Borges*, 919 F. 2d, at 654, n. 1 (noting that petitioner is absent and not party to appeal). If the Eleventh Circuit deems this consequence of petitioner's flight a significant interference with the operation of its appellate process, then, under the reasoning we employ today, a dismissal rule could properly be applied.

As this case reaches us, however, there is no reason to believe that the Eleventh Circuit has made such a judgment. Application of the *Holmes* rule, as formulated by the Eleventh Circuit thus far, does not require the kind of connection between fugitivity and the appellate process that we hold necessary today; instead, it may rest on nothing more than the faulty premise that any act of judicial defiance, whether or not it affects the appellate process, is punishable by appellate dismissal. See *Holmes*, 680 F. 2d, at 1374; *supra*, at 246. Accordingly, that the Eleventh Circuit saw fit to dismiss this case under *Holmes* does not by itself reflect a determination

---

[23] We cannot agree with petitioner that the courts may only consider whether to dismiss the appeal of a former fugitive on an individual, case-specific basis. Though dismissal of fugitive appeals is always discretionary, in the sense that fugitivity does not "strip the case of its character as an adjudicable case or controversy," *Molinaro* v. *New Jersey*, 396 U. S. 365, 366 (1970); see also n. 11, *supra*, appellate courts may exercise that discretion by developing generally applicable rules to cover specific, recurring situations. Indeed, this Court itself has formulated a general rule allowing for dismissal of petitions that come before it while the petitioner is at large. See *Smith* v. *United States*, 94 U. S. 97 (1876). The problem with the *Holmes* rule is not that the appeals it reaches are subject to automatic dismissal, but that it reaches too many appeals—including those of defendants whose former fugitive status in no way affects the appellate process.

that dismissal would be appropriate under the narrower circumstances we now define.

Nor is there any indication in the record below—either in the Government's motion to dismiss, or in the Eleventh Circuit's *per curiam* order—that petitioner's former fugitivity was deemed to present an obstacle to orderly appellate review. Thus, we have no reason to assume that the Eleventh Circuit would consider the duplication of resources involved in hearing petitioner's appeal separately from those of his codefendants—which can of course be minimized by reliance on the earlier panel decision in *United States* v. *Mieres-Borges*, see *supra*, at 238, and n. 6—sufficiently disruptive of the appellate process that dismissal would be a reasonable response, on the facts of this case and under the standard we announce today. We leave that determination to the Court of Appeals on remand.[24]

In short, when a defendant's flight and recapture occur before appeal, the defendant's former fugitive status may well lack the kind of connection to the appellate process that would justify an appellate sanction of dismissal. In such cases, fugitivity while a case is pending before a district court, like other contempts of court, is best sanctioned by the district court itself. The contempt for the appellate process manifested by flight while a case is pending on appeal remains subject to the rule of *Molinaro*.

---

[24] Neither the reasonableness standard of *Thomas* v. *Arn*, 474 U. S. 140 (1985), nor Federal Rule of Appellate Procedure 47, mandates uniformity among the circuits in their approach to fugitive dismissal rules. See *Thomas*, 474 U. S., at 157 (STEVENS, J., dissenting). In other words, so long as all circuit rules meet the threshold reasonableness requirement, in that they mandate dismissal only when fugitivity has some connection to the appellate process, they may vary considerably in their operation. For this additional reason, we hesitate to decide as a general matter whether and under what circumstances preappeal flight that leads to severance of codefendants' appeals will warrant appellate dismissal, and instead leave that question to the various courts of appeals.

The judgment of the Court of Appeals is vacated, and the case is remanded for further proceedings consistent with this opinion.

*So ordered.*

CHIEF JUSTICE REHNQUIST, with whom JUSTICE WHITE, JUSTICE O'CONNOR, and JUSTICE THOMAS join, dissenting.

The Court holds that, in general, a court of appeals may not dismiss an appeal based on a defendant's fugitive status if that status does not coincide with the pendency of the appeal. We disagree. The only difference between a defendant who absconds preappeal and one who absconds postappeal is that the former has filed a notice of appeal while the latter has not. This "distinction" is not strong enough to support the Court's holding, for there is as much of a chance that flight will disrupt the proper functioning of the appellate process if it occurs before the court of appeals obtains jurisdiction as there is if it occurs after the court of appeals obtains jurisdiction. As a consequence, there is no reason why the authority to dismiss an appeal should be based on the timing of a defendant's escape. Although we agree with the Court that there must be some "connection" between escape and the appellate process, we disagree with the conclusion that recapture before appeal generally breaks the connection.[1]

It is beyond dispute that the courts of appeals have supervisory power to create and enforce "procedural rules governing the management of litigation." *Thomas* v. *Arn,* 474

---

[1] The Court erroneously strikes the *Holmes* rule on the basis that "it reaches too many appeals," *ante,* at 250, n. 23, because there is no overbreadth doctrine applicable in this context. See *Broadrick* v. *Oklahoma,* 413 U. S. 601, 610–611 (1973) (overbreadth doctrine is the exception rather than the rule because "courts are not roving commissions assigned to pass judgment on the validity of the Nation's laws"). As long as the fugitive dismissal rule was applied legally to the facts of this case, the Eleventh Circuit's rule cannot be struck down. It is for this reason that we would affirm the Eleventh Circuit rather than vacating and remanding.

U. S. 140, 146 (1985). The only limit on this authority is that the rules may not violate the Constitution or a statute, and must be reasonable in light of the concerns they are designed to address. See *id.*, at 146–148. There can be no argument that the fugitive dismissal rule employed by the Eleventh Circuit violates the Constitution because a convicted criminal has no constitutional right to an appeal. *Abney* v. *United States*, 431 U. S. 651, 656 (1977). Nor is the rule inconsistent with 28 U. S. C. § 1291, which grants to criminal defendants the right of appeal, because that section does not set forth the procedural requirements for perfecting an appeal. Those requirements are set forth in the Federal Rules of Appellate Procedure and the local rules of the courts of appeals. Indeed, under Federal Rule of Appellate Procedure 47, each court of appeals has authority to make rules "governing its practice" either through rulemaking or adjudication.

The fugitive dismissal rule is reasonable in light of the interests it is designed to protect. In *Molinaro* v. *New Jersey*, 396 U. S. 365 (1970), we declined to adjudicate a defendant's case because he fled after appealing his state conviction. We reasoned that by absconding, the defendant forfeited his right to "call upon the resources of the Court for determination of his claims." *Id.*, at 366. And in *Estelle* v. *Dorrough*, 420 U. S. 534 (1975), we upheld a Texas statute that mandated dismissal of an appeal if the defendant fled after invoking the jurisdiction of the appellate court. We recognized that Texas reasonably has an interest in discouraging felony escape, encouraging voluntary surrenders, and promoting the "efficient, dignified operation of the Texas Court of Criminal Appeals." *Id.*, at 537. Both *Molinaro* and *Estelle* are premised on the idea that a reviewing court may invoke procedural rules to protect its jurisdiction and to ensure the orderly and efficient use of its limited resources.

While we agree with the Court that there must be some connection between fugitivity and the appellate process in

order to justify a rule providing for dismissal on that basis, we do not agree that flight generally does not have the required connection simply because it occurs before the defendant or his counsel files a notice of appeal.[2]   It is fallacious to suggest that a defendant's actions in fleeing likely will have no effect upon the appellate process unless those actions occur while the court of appeals has jurisdiction over the case.   Indeed, flight during the pendency of an appeal may have *less* of an effect on the appellate process, especially in cases where the defendant flees and is recaptured while the appeal is pending.   Because there is no delay between conviction and invocation of the appellate process, dismissal in such a case is premised on the mere *threat* to the proper operation of the appellate process.   Yet the Court concedes, as it must, that courts of appeals may dismiss an appeal in this situation.   *Ante*, at 239–242; see *Allen* v. *Georgia*, 166 U. S. 138 (1897).

If, as in the present case, the defendant eventually is recaptured and resentenced, he obtains a second chance to challenge his conviction and sentence, and consequently delays the appellate process by at least the amount of time he managed to elude law enforcement authorities.   We are startled by the Court's assertion that "any concomitant delay . . . likely will exhaust itself well before the appellate tribunal enters the picture."   *Ante*, at 245.   If the defendant obtains an additional opportunity to file a timely notice of appeal, the court of appeals, in the absence of a fugitive dismissal rule or any jurisdictional defect, *must* entertain the appeal.   At

---

[2] The very wording of Rule 47, which gives the appellate courts authority to create local procedural rules, supports the connection requirement: "Each court of appeals by action of a majority of the circuit judges in regular active service may from time to time make and amend rules *governing its practice* not inconsistent with these rules.   In all cases not provided for by rule, the courts of appeals may regulate their practice in any manner not inconsistent with these rules."   Fed. Rule App. Proc. 47 (emphasis added).

the very least, the result is an increase in the court's docket and a blow to docket organization and predictability. This disruption to the management of the court's docketing procedures is qualitatively different from delay caused by other factors like settlement by the parties. Unlike the fugitive's case, the settled case will not turn up as an additional and unexpected case on the court's docket some time down the road. And of course, the burden of delay increases exponentially with the number of defendants who abscond preappeal, but are recaptured and invoke the appellate court's jurisdiction in a timely manner. The Court fails to explain how this obvious delay somehow disappears when the defendant is recaptured before invoking the appellate court's jurisdiction.

As is demonstrated by the instant case, the delay caused by preappeal flight can thwart the administration of justice by forcing a severance, requiring duplication of precious appellate resources, and raising the specter of inconsistent judgments. Here, the appellate process was delayed by approximately 19 months (counting both the period of fugitivity and the time used by the District Court to resentence petitioner). During this delay, the Eleventh Circuit heard and decided the appeals filed by petitioner's codefendants. *United States* v. *Mieres-Borges*, 919 F. 2d 652 (1990), cert. denied, 499 U. S. 980 (1991). Because petitioner fled, the Eleventh Circuit was unable to consolidate petitioner's appeal with those filed by his codefendants and conserve judicial resources. In addition to forcing a severance, petitioner's flight created a real possibility of inconsistent judgments. Petitioner's flight "imposed exactly the same burden of duplication on the court of appeals that it would have if he had filed his notice of appeal before absconding." Brief for United States 21. Had petitioner's counsel filed a notice of appeal on petitioner's behalf while he remained at large, the Court of Appeals could have dismissed the appeal with prejudice. See *Molinaro*, 396 U. S., at 366. Since petitioner's flight had an adverse effect on the proper functioning of

the Eleventh Circuit's process, there is no principled reason why that court should not be able to dismiss petitioner's appeal.

In addition to administration, the Eleventh Circuit's fugitive dismissal rule is supported by an interest in deterring flight and encouraging voluntary surrender. Due to the adverse effects that flight, whenever it occurs, can have on the proper functioning of the appellate process, courts of appeals have an obvious interest in deterring escape and encouraging voluntary surrender. Unfortunately, today's opinion only encourages flight and discourages surrender. To a defendant deciding whether to flee before or after filing a notice of appeal, today's decision makes the choice simple. If the defendant flees preappeal and happens to get caught after the time for filing a notice of appeal has expired, he still has the opportunity for appellate review if he can persuade a district judge to resentence him. If the district judge refuses, the defendant is at no more of a disadvantage than he would have been had he escaped after filing an appeal since flight after appeal can automatically extinguish the right to appellate review. See *Molinaro, supra.*

A rule permitting dismissal when a defendant's flight interrupts the appellate process protects respect for the judicial system. When a defendant escapes, whether before or after lodging an appeal, he flouts the authority of the *judicial process*, of which the court of appeals is an integral part. Surely the Court does not mean to argue that a defendant who escapes during district court proceedings intends only disrespect for that tribunal. Quite obviously, a fleeing defendant has no intention of returning, at least voluntarily. His flight therefore demonstrates an equal amount of disrespect for the authority of the court of appeals as it does for the district court. Viewed in this light, the "finely calibrated response" available to the district court, *ante,* at 247, does nothing to vindicate the affront to the appellate process. The Court's argument is not enhanced by the use of far-

fetched hypotheticals, see *ante,* at 246, because the dignity rationale does not exist in a vacuum. As outlined above, a reviewing court may not dismiss an appeal in the absence of some effect on its orderly functioning.

While the Court recognizes that the reasoning underlying the opinion requires an exception for cases in which flight throws a wrench into the proper workings of the appellate process, *ante,* at 249–250, its rule is too narrow. The Court limits the exception to cases in which flight creates a "significant interference with the operation of [the] appellate process." *Ante,* at 250. Translated, the rule applies preappeal only when retrial is hampered, a "'meaningful appeal [is] impossible,'" or the case involves multiple defendants, thereby causing a forced severance. *Ante,* at 249–250. This grudging concession is insufficient because it fails to include those cases where sheer delay caused by the fugitivity of the lone defendant has an adverse effect on the appellate process.

In sum, courts of appeals have supervisory authority, both inherent and under Rule 47, to create and enforce procedural rules designed to promote the management of their docket. Fugitivity dismissal rules are no exception. In cases where fugitivity obstructs the orderly workings of the appellate process, this authority is properly exercised. Because petitioner's flight delayed the appellate process by approximately 19 months, and involved the burden of duplication and the risk of inconsistent judgments, we would hold that the Eleventh Circuit properly applied its fugitive dismissal rule in this case.