[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAR 20 2001
THOMAS K. KAHN
CLERK

_____

No. 00-10295

_____

D. C. Docket No. 99-06962-CV-JAL

STEVEN MISHKIN PESIN,

Plaintiff-Appellee,
Cross-Appellant,

versus

MARIA TERESA OSORIO RODRIGUEZ,

Defendant-Appellant,
Cross-Appellee.

_____

Appeals from the United States District Court
for the Southern District of Florida

_____

**(March 20, 2001)**

Before WILSON, KRAVITCH and COX, Circuit Judges.

PER CURIAM:

We have for review Maria Teresa Osorio Rodriguez's[1] appeal of the district court's grant of Steven Mishkin Pesin's petition for the return of two minor children made pursuant to the International Child Abduction Remedies Act ("ICARA"), 42 U.S.C. §§ 11601-11610.[2] Because Osorio has repeatedly defied the district court's orders, ignored contempt sanctions and has remained a fugitive from justice, we dismiss her appeal pursuant to the "fugitive disentitlement doctrine."

## Background

Osorio and Mishkin are both Venezuelan citizens.[3] They were married in Venezuela in July 1988 and lived together with their two minor children in Caracas until October 1998. At that point, the couple began to have marital problems and Mishkin moved to his mother's house in Caracas. The family traveled to South Florida in December 1998 for a scheduled winter holiday. They were to return to

---

[1] There has been some inconsistency in the record and the briefs as to names used to refer to the parties. For clarity, we will follow the magistrate judge and refer to the appellant and appellee as Osorio and Mishkin respectively.

[2] ICARA is the statute implementing the Hague Convention on the Civil Aspects of International Child Abduction, Oct. 25 1980, T.I.A.S. No. 11,670 [hereinafter the Hague Convention]. The Hague Convention was enacted to "secure the prompt return of children wrongfully removed to or retained in any Contracting State" and to "ensure that rights of custody and of access under the law of one Contracting State are effectively respected in the other Contracting States." Hague Convention, art. 1, T.I.A.S. No. 11,670, at 4. Under ICARA, a person may petition a court authorized to exercise jurisdiction in the place where a child is located for the return of the child to his or her habitual residence in another signatory country. *See* 42 U.S.C. § 11603; Hague Convention, art. 3(a), T.I.A.S. No. 11,670, at 4.

[3] Mishkin is also a citizen of the United States, while Osorio is also a Spanish citizen.

Venezuela on January 11, 1999. Because of their marital discord, Osorio and Mishkin stayed at separate residences while in Florida.[4] Before the family was due to return to Venezuela, Osorio requested her husband's permission to allow her and the children to remain in Florida until the children were due back in school in Venezuela. This would have resulted in a stay of no more than a few extra days. Mishkin agreed and returned home alone.

After the additional time had passed, Osorio again delayed her return with the children, first claiming that she that she missed the scheduled flight, but later informing Mishkin that she was confused about her feelings toward him and wished to remain in Florida. Between January and June of 1999, Osorio and the children resided in Florida, while Mishkin remained in Venezuela. Mishkin testified that he sought to reconcile with his wife during this period and did not file for divorce because he believed that they could resolve their differences.

After the children's school year was up, Osorio agreed to allow the children to return to Venezuela for three weeks preceding the start of summer camp in Florida. On the day before Mishkin was to pick up the children, he was informed by his wife's brother that Osorio had filed for divorce and would only let him see his children if he

---

[4]     The family also traveled to the island of Aruba during the vacation. While in Aruba, Osorio and Rodriguez resided together.

accepted that the children would stay in Florida and would sign no-contest divorce papers. He refused and called Osorio. He informed her that he intended to pick up the children at their school as planned. Osorio asked him to come an hour later than originally scheduled. Mishkin agreed and arrived to find that the children were gone. When Mishkin later met with Osorio, she reiterated her condition that he sign the divorce papers before he could see the children. Mishkin refused and returned alone to Venezuela. He soon after filed for divorce in Venezuela and then petitioned the district court for the return of the children pursuant to ICARA.

The case was referred to a magistrate judge who conducted an evidentiary hearing and filed a report recommending that Mishkin's petition be granted. The district court agreed, and entered an order on December 16, 1999 compelling Osorio to return the children to Venezuela within ten days and ordering her to keep the children within the Southern District of Florida pending their return to Venezuela. *See Pesin v. Osorio Rodriguez*, 77 F. Supp. 2d 1277, 1291 (S.D. Fla. 1999). Osorio returned the children to Venezuela on December 20, 1999, but left the country with them the next day.

After the ten-day period had elapsed, Mishkin informed the court that Osorio had failed to return the children to him in Venezuela. The district court then set a status conference for January 11, 2000, ordering all parties and the children to attend.

4

Neither Osorio nor the children were present at the conference. The court then issued an order to show cause why Osorio should not be held in contempt and scheduled another hearing. Again, neither Osorio nor the children attended the show cause hearing. Following Osorio's failure to attend the second hearing, the district court found Osorio in contempt for her multiple refusals to comply with the court's orders and entered a bench warrant for her arrest. The court's order also provided that Osorio could purge her contempt by presenting the children before the district court or a proper Venezuelan court.

At the time of oral argument in this case, Osorio had yet to comply with the district court's order. Her attorney informed the court that her whereabouts were unknown. Despite failing to end her contumacious conduct or submit to the court's authority, Osorio has appealed the grant of Mishkin's ICARA petition.[5]

## Issues on Appeal

Osorio raises multiple issues in her briefs. However, as we discuss below, we decline to entertain Osorio's appeal based on the fugitive disentitlement doctrine.

## Discussion

---

[5] Osorio also filed a notice of appeal of the contempt order, but later voluntarily dismissed the appeal.

It is well-settled law that an appellate court may dismiss the appeal of a party who is a fugitive from justice during the pendency of her appeal. The Supreme Court first applied the fugitive disentitlement doctrine in the 1876 case of *Smith v. United States*. *See* 94 U.S. 97, 24 L. Ed. 32 (1876). In *Smith*, the Court declined to entertain the petition of a criminal defendant who had escaped and remained at large when his petition arose before the Court. The Court noted that it had no assurance that whatever judgment it rendered would be enforceable, since the petitioner was outside the reach of the law and would likely ignore an unfavorable result. *See id.*

Following the *Smith* decision, the fugitive disentitlement doctrine has been applied at both the trial and appellate level and in both criminal and civil cases. The power of a court to disentitle a fugitive from access to the court's power is not jurisdictional in nature. *See Molinaro v. New Jersey*, 396 U.S. 365, 366, 90 S. Ct. 498 (1970) (noting that an appellant's fugitive status does not strip a case of its character as an adjudicable case or controversy). Instead, the doctrine is an equitable one and rests upon the power of the courts to administer the federal courts system. *See Ortega-Rodriguez v. United States*, 507 U.S. 234, 244, 113 S. Ct. 1199, 1205 (1993). Aside from the difficulty of enforcing a judgment against a fugitive, other rationales underlying the doctrine include promoting the efficient operation of the courts, discouraging flights from justice, and avoiding prejudice to the other side caused by

the appellant's fugitive status. *See Empire Blue Cross and Blue Shield v. Finkelstein,* 111 F.3d 278, 280 (2nd Cir. 1997).

Although the "classic case" in which the doctrine has been applied involves the direct appeal of a criminal defendant, the doctrine has also been applied where the fugitive was not a criminal defendant, but instead was a civil litigant who continued to ignore court orders and evade arrest. For example, in the recent case of *United States v. Barnette,* we applied the doctrine to bar the appeal of two civil defendants who had ignored civil contempt orders and had evaded arrest pursuant to bench warrants. *See* 129 F.3d 1179, 1185-86 (11th Cir. 1997). The appellants in *Barnette* were a married couple who failed to comply with the district court's production orders. The court issued a show cause order and scheduled a hearing. Neither appellant appeared at the hearing. The court held the Barnettes in contempt and issued bench warrants. At the time of the appeal, the Barnettes had failed to purge their contempt and continued to evade arrest. The *Barnette* court opined that, as in *Smith,* any judgment rendered in the case would be an advisory opinion, since the Barnettes were almost certain to ignore an adverse ruling. Therefore, the court dismissed the appeal.

We conclude that the same result is proper in this case. Osorio has repeatedly defied court orders and ignored contempt sanctions and has continued to evade arrest.

Her behavior to date leaves little doubt that she would defy an adverse ruling. Moreover, it would be inequitable to allow Osorio to use the resources of the courts only if the outcome is a benefit to her. We cannot permit Osorio to reap the benefits of a judicial system the orders of which she has continued to flaunt. Accordingly, Osorio's appeal is dismissed.

Mishkin has filed a cross-appeal, contending that he was improperly denied attorneys' fees and costs available under ICARA for successful petitioners. See 42 U.S.C. § 11607(b)(3). Under Local Rule 7.3 of the Southern District of Florida, a "motion for attorneys['] fees and/or to tax costs . . . shall be filed and served within 30 days of entry of [f]inal [j]udgment . . ." S.D. Fla. L.R. 7.3. It is undisputed that Mishkin failed to file a motion for attorneys' fees within the time provided by Local Rule. Accordingly, we reject Mishkin's cross-appeal as meritless.

APPEAL DISMISSED; CROSS-APPEAL, AFFIRMED.