BAKER, Chief Judge,
with whom EFFRON, Senior Judge, joins (dissenting):
The Court reaches for a jurisdictional issue the parties did not raise or appeal and that we need not decide. In doing so the majority reaches an erroneous conclusion that dramatically curtails the jurisdiction of this Court to provide appellate and civilian review of trials in absentia. Such trials raise uncommon and complex Fifth and Sixth Amendment issues as well as ethical challenges for defense counsel. These are just the sort of issues that must be subject to appellate review in a credible justice system and should be subject to a uniform application of law between services and servieemem-bers. The majority’s conclusion is also logically inconsistent, permitting defense counsel to represent absent clients at trial but not on appeal. This is not required by the law and it is not fair. It is no surprise, then, that the Court’s decision will overturn settled law and precedent dating to the advent of the Uniform Code of Military Justice (UCMJ). Therefore, I respectfully dissent.
In contrast to the majority, I would decide this case on the basis for which it was originally granted and determine whether defense counsel was ineffective and, if so, whether Appellant was prejudiced under Strickland. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Indeed, the legal issues underlying this case underscore the very concerns I have with the majority’s jurisdictional overreach: trial defense counsel’s actions at trial proved problematic in the absence of his client, which, on appeal, cast doubt on the legality of the proceedings. Nothing in the UCMJ suggests that Congress, by design or implication, established a system allowing service-members to be tried in their absence yet denied civilian appellate review because of that absence. Indeed, these cases raise a host of effectiveness and ethical issues for counsel that should be subject to appellate review in a credible system of justice.
*70 Discussion
In this ease, the Court initially granted two issues raised by Appellant. The first asserted ineffective assistance of counsel after trial defense counsel delivered an unsworn statement on Appellant’s behalf at the conclusion of her trial in absentia. Appellant, then the accused, went absent without leave (AWOL) before she was tried but after she was charged. During this interim period, defense counsel and the accused prepared an un-sworn statement, which Appellant intended to give to the members. But the context for making that unsworn statement changed in a manner neither the accused nor trial defense counsel had contemplated. Among other unexpected developments, the accused’s own father testified in a manner that undercut if not eviscerated her unsworn statement. Presumably, this unfavorable turn of events would have warranted at least reconsideration and revalidation of the earlier decision to give an unsworn statement and, in particular, the prior drafted unsworn statement. The second granted issue raised a related matter regarding trial defense counsel’s invocation of his right to silence when asked by the military judge whether the absent accused had consented to his delivery of the accused’s unsworn statement.
Against this backdrop, and following oral argument, this Court specified a number of issues addressed to whether Appellant had authorized an appeal to this Court and, in any event, whether the “fugitive disentitlement doctrine” should apply.[1] Appellant responded: yes and no. On point one — whether Appellant had authorized appeal to this Court — the Government agreed and noted “Appellant expressed her desire for appellate representation before she went absent from these proceedings.” However, on point two, the Government disagreed. “Although appellant’s petition for review was lawfully before this court, her continuing fugitive status should preclude her from any relief from this court.” To emphasize, the Government stated both that the case is lawfully before this Court and “[a]ppellate defense counsel has a continuing duty to represent appellant” and if the Appellant “cannot be located within the statutory period to elect appeal to this court, appellate defense counsel is responsible for preserving, to the extent practicable under the law, appellant’s ability to invoke the jurisdiction of this court upon her return.”
Nonetheless, a majority of this Court has determined not only that it is impracticable for defense counsel to continue to represent the client, but also that it falls outside our jurisdiction to hear any case in which an appellate defense counsel does not demonstrate the appellant personally requested an appeal to this Court.
[T]he decision to appeal must be made by the appellant and because the record does not reflect that Moss authorized such an appeal, the appeal must be dismissed.
United States v. Moss, 73 M.J. 65.
[A]nd because Moss did not authorize the appeal, this court lacks statutory jurisdiction under Article 67(a)(3) and the appeal must be dismissed.
Moss, 73 M.J. 69.
the “Post Trial and Appellate Rights Advisement,” ... was, by its own terms, limited to representation before the ACCA Therefore, the attorney-client relationship was limited to representation before the ACCA.
Moss, 73 M.J. 69. Of course, this Court is not bound by the parties’ agreement. Therefore, the problem is not that the parties reached a different conclusion than the majority; the problem is that each of these conclusions is erroneous. They also undercut the purpose and intent of the UCMJ, including one of the bedrocks of the military justice system: the assignment of military defense counsel to an accused free of charge all the way to the Supreme Court.
First, the military justice system is predicated on the principle of civilian oversight. This takes the form of appellate review by *71 this Court and potentially by the Supreme Court. Civilian review is a sine qua non for the credibility of the military justice system. The majority, however, has determined that there should be no civilian review of trials where an accused has absented himself prior to appeal before this Court or the Supreme Court (unless, of course, for some unfathomable reason the accused was to elect in writing to appeal to this Court and perhaps the Supreme Court before being tried .and convicted at court-martial).
The law does not compel this result and has not for more than sixty years of the UCMJ’s existence. Nor have there been amendments to the UCMJ that would dictate a contrary result. Moreover, unlike Rodriguez where a three-judge majority of this Court decided to shed the jurisdiction this Court had exercised consistently for the previous sixty years, the majority’s decision here is not based on any language in the UCMJ. Compare United States v. Rodriguez, 67 M.J. 110, 115 (C.A.A.F.2009) (“While the option of whether to petition or not petition the court rests with the appellant (‘may[1]), Congress established without qualification when such petitions must be filed. Under the plain language of the statute, the petition must be filed within the sixty-day statutory time limit.”). Further, the majority’s analysis is contradictory and fails to recognize or address the tension between the exercise of jurisdiction to conduct trials in absentia and the asserted lack of jurisdiction to permit appeals in absentia. The UCMJ contains no express prohibition on the actions that a defense counsel may take on behalf of a client to include representation during a trial in absentia as well as an appeal. Nonetheless, the majority finds that a trial in absen-tia with a defense counsel who is not specifically authorized to represent the accused has jurisdiction, but an appeal of that trial where an accused cannot be shown to have authorized the appeal explicitly deprives this Court of jurisdiction. I do not see how this result is consistent, how it involves jurisdiction, or how it is fair. But that is the result. A defense counsel can represent an absent accused at trial but not on appeal.
Put another way: there is no express authority for defense counsel to act for an accused who is not present. Indeed, there is no express authority in the UCMJ for the accused to be tried in absentia. On the contrary: Article 39(b), UCMJ, 10 U.S.C. § 839(b) (2012) expressly requires the “presence of the accused” in all Article 39(a), UCMJ, sessions. Article 39(c), UCMJ, requires that “all other proceedings” take place “in the presence of the accused.” If, as the majority contends, the references to the accused in Article 67, UCMJ, 10 U.S.C. § 867 (2012), are jurisdictional, why would the references to the accused in Article 39(b), UCMJ, not establish a jurisdictional prohibition against trial in absentia?
The point here is not that there is a prohibition against trial in absentia. It is that the references to the accused in Article 67, UCMJ, like the references to the accused in Article 39, UCMJ, must be read reasonably in light of the history and purpose of the UCMJ. If the accused can be tried in absen-tia under Article 39, UCMJ, then there is no statutory reason to read Article 67, UCMJ, as prohibiting an appeal in absentia.
Article 67, UCMJ, and our rules heretofore have made this clear. Article 67(b)(2), UCMJ, has two important provisions: requirement for service of the Court of Criminal Appeals (CCA) decision on appellate counsel and express provision for this Court to act on a petition in accordance with our rules. The Court’s Rules of Practice and Procedure (e.g., Rule 20) expressly recognize a petition filed by appellate defense counsel as a separate channel of appeal. C.A.A.F. R. 20(b). There is no statutory requirement that counsel’s submission be accompanied by an authorization from the client, nor do the rules require such a submission. How, then, can this be jurisdictional? This is a jurisdictional invention of the Court.
Moreover, by focusing exclusively on the culpability and conduct of the accused and not on the credibility of the system as a whole, the majority removes the prospect of civilian and even military appellate review in that group of cases that is arguably most *72 suspect to abuse — trials in absentia.[2] Indeed, trials in absentia are the sort of trials that undermine the credibility of foreign military justice systems. These are also just the sort of trials where civilian oversight of the U.S. military justice system is important, as a matter of validation and as a matter of credibility. In addition to raising important questions involving the knowing and voluntary waiver of an accused’s Fifth and Sixth Amendment rights, trials in absentia raise a host of uncommon and complex ethical challenges for defense counsel. What actions may or should defense counsel take at trial without the informed consent of the client? See Model Rules of Profl Conduct R. 1.4 (2013). What duties, if any, does defense counsel have to seek a speedy trial, or in the alternative, delay the start of a trial? Id; Dep’t of the Army, Reg. 27-26, Rules of Professional Conduct for Lawyers R. 3.2 (May 1, 1992). To what extent, if at all, can defense counsel waive the attorney-client privilege? See United States v. Marcum, 60 M.J. 198 (C.A.A.F.2004); Military Rule of Evidence (M.R.E.) 511. To what extent may defense counsel waive an accused’s right to trial by members? When, and to what extent, can defense counsel effectively represent a client when the defendant is not present at trial?[3] The majority opinion not only fails to spot and address these issues by choosing to curtail appellate review of in absentia trials, but it also ensures the answers will vary from trial to trial and defense counsel to defense counsel. That is not the uniform system Congress envisioned or enacted.
Even more alarming, the effect of the majority’s decision is to close the courtroom door not only to an accused who intentionally absents himself, but also to military members who are convicted at trial and subsequently cannot be located while they are on appellate leave. We cannot put a number on the potential pool of appellants that might fall into this category, but we know it is a large number based on the number of cases dismissed following Rodriguez.[4]
To avoid this risk — not just of the AWOL appellant, but the far more frequent appellant who cannot be located — the majority’s new rule will compel defense counsel to seek authorization to appeal to the Courts of Criminal Appeal, this Court, and the Supreme Court. Such an authorization will neither be informed nor based on a particular decision of the Court of Criminal Appeals. It will be defensive in nature.to ensure jurisdiction in the event of appeal. But of course, having authorized an appeal, appellate defense counsel will be bound to appeal. In short, authorization to appeal will be given without specific input from an appellant, but based on the risk that appellate defense counsel will not be able to locate an appellant to authorize an appeal upon receipt of the CCA’s decision. Nor will authorization to appeal be based on what is actually decided at the CCA. For this same reason, defense and appellate defense counsel who wish to avoid ineffective assistance of counsel claims should also seek advance authorization to appeal to the Supreme Court, without first knowing the outcome before the Criminal Court of Appeals or this Court. As discussed above, this result is not required by the UCMJ; it runs contrary to the UCMJ’s intent.
Finally, the majority’s adoption of a mechanical and formalistic approach to determining whether an appellant has authorized appeal before this Court unduly and impracticably interferes with the attorney-client privilege. By requiring appellate defense counsel to demonstrate that a client has specifically authorized appeal to this Court, the majority places appellate defense counsel between a rock and hard place. Either the decision dictates the manner in which they communicate with their client by compelling written evidence of an appeal authorization *73 or it will compel appellate counsel to reveal verbal attorney-client communications in order to demonstrate a personal decision by an appellant to appeal to a specific court. Presumably, defense counsel will be compelled to file an affidavit documenting such a client communication.
The majority does all this without even addressing or explaining how a lawyer might fulfill his or her ethical duty to represent clients zealously and diligently when the client cannot be located, for whatever reason, to authorize an appeal personally, and where the lawyer believes meritorious issues warrant appeal.
For all these reasons, I respectfully dissent.

. Under what has been labeled the "fugitive dis-entitlement doctrine," "an appellate court may dismiss the appeal of a defendant who is a fugitive from justice during the pendency of his appeal.” Ortega-Rodríguez v. United States, 507 U.S. 234, 239, 113 S.Ct. 1199, 122 L.Ed.2d 581 (1993).

. For this same reason, I would not apply the fugitive disentitlement doctrine under the circumstances of this case.

. See Sarah C. Sykes, "Defense Counsel, Please Rise": A Comparative Analysis of Trial In Absen-tia, 216 Mil. L.Rev. 170 (2013).

. No doubt this Court has heard and decided many cases for which the majority decides today this Court has never had jurisdiction.