Argued and submitted March 7; decision of Court of Appeals reversed; judgment of circuit court reversed, and case remanded to circuit court for further proceedings October 6, 2022

GABRIEL DAVID SILLS,
*Petitioner on Review,*

*v.*

STATE OF OREGON,
*Respondent on Review.*

(CC 16CV15239) (CA A171781) (SC S068724)

518 P3d 582

The circuit court dismissed petitioner's petition for post-conviction relief on the basis that petitioner's flight from justice during his criminal case—which had ultimately delayed his sentencing by 10 years—would impair the state's ability to present witness testimony in any retrial that the post-conviction court might order. At issue is whether the common-law "fugitive dismissal rule" should be extended to post-conviction cases filed by former fugitives. The Court of Appeals affirmed without opinion. *Held*: Assuming without deciding that a petitioner's former fugitive status may sometimes justify a post-conviction court refusing to carry out the statutorily prescribed post-conviction relief process, dismissal of a petition for post-conviction relief is not justified when the basis for dismissal is prejudice that: (1) would arise only in a later proceeding before a different court, (2) is contingent on petitioner first establishing that he is entitled to post-conviction relief, and (3) would involve only the kind of generic delay-based impact on witness testimony that the post-conviction process already contemplates.

The decision of the Court of Appeals is reversed. The judgment of the circuit court is reversed, and the case is remanded to the circuit court for further proceedings.

En Banc

On review from the Court of Appeals.*

Lindsey Burrows, O'Connor Weber LLC, Portland, argued the cause and filed the briefs for petitioner on review.

Robert M. Wilsey, Assistant Attorney General, Salem, argued the cause and filed the brief for respondent on review. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

_____
* Appeal from Marion County Circuit Court, Lindsay R. Partridge, Judge. 311 Or App 39, 484 P3d 1080 (2021).

FLYNN, J.

The decision of the Court of Appeals is reversed. The judgment of the circuit court is reversed, and the case is remanded to the circuit court for further proceedings.

**FLYNN, J.**

This case concerns the dismissal of a petition for post-conviction relief filed by a petitioner who was a fugitive from justice while his criminal case was pending in the trial court. The post-conviction court dismissed the petition on the basis that petitioner's flight from justice, which ultimately delayed his sentencing by 10 years, would impair the state's ability to present witness testimony in any retrial that the post-conviction court might order. At issue is whether the common-law "fugitive dismissal rule" should be extended to post-conviction cases filed by former fugitives. The Court of Appeals affirmed without opinion. *Sills v. State of Oregon*, 311 Or App 39, 484 P3d 1080 (2021) (*Sills II*). On review, we reverse and remand. As we will explain, even if a petitioner's former fugitive status might sometimes justify a post-conviction court refusing to carry out the statutorily prescribed post-conviction relief process, we conclude that the court's concerns in this case—about delay-based prejudice to the state in any retrial—did not justify dismissal of petitioner's claim for post-conviction relief.

## I.  FACTS

### A.  *Petitioner's Criminal Trial and Appeal*

The pertinent details of petitioner's criminal trial and direct appeal are set out in the opinion of the Court of Appeals in *State v. Sills*, 260 Or App 384, 317 P3d 307 (2013), *rev den*, 355 Or 380 (2014) (*Sills I*). In 1999, petitioner was arrested and charged with (among other things) first-degree sexual abuse and public indecency. *See id.* at 386-87. Both offenses involved victims and eyewitnesses who were 14 years old at the time the case went to trial. *Id.* at 389. Petitioner pleaded guilty to the public indecency charge and was found guilty of first-degree sexual abuse in 2000. *Id.* at 387. Before petitioner could be sentenced on those charges, however, he fled the state to California. *Id.*

Petitioner remained at large until 2006, when he was arrested in California and ultimately convicted and sentenced for crimes there. *Id.* California resisted returning defendant to Oregon for sentencing until 2010 and finally did so only pursuant to an executive agreement signed by the

governors of both states that guaranteed petitioner would be returned to California after his Oregon sentencing. *Id*. at 387-88. The trial court in Oregon imposed a 75-month sentence to run consecutively to the California prison term, and petitioner was returned to California to serve out the remainder of his California sentence. *Id*. at 388.

Petitioner then filed a direct appeal of his Oregon conviction, raising some assignments of error that would have required a retrial if defendant were to prevail. The state asked the Court of Appeals to dismiss the appeal on the ground that, if petitioner were to prevail in the appeal, "it would be inequitable to order retrial" because petitioner's flight prior to sentencing had so delayed his appeal that the state would be prejudiced in locating witnesses and presenting evidence at any new trial. *Id*. at 388-89.

The Court of Appeals agreed and refused to reach the merits of those assignments of error that might have resulted in a new trial for petitioner. *Id*. at 392. The court explained that it was applying the "former fugitive doctrine," which it described as a doctrine premised on an appellate court's "inherent judicial authority to dismiss a criminal defendant's appeal if the defendant's former fugitive status significantly interfered with the operation of the appellate process." *Id*. at 388. The court reasoned that petitioner's flight between trial and sentencing had delayed the appeal to the extent that the state would face significant obstacles both in its ability to defeat the appeal and in its ability to conduct the retrial that petitioner sought. *Id*. at 392-93. Under those circumstances, the court concluded, petitioner's escape from justice "forfeits his appeal," except as to two assignments of error that challenged only his sentence. *Id*. at 394. This court denied review of the decision in petitioner's direct appeal.

## B.  *Petitioner's Post-Conviction Proceedings*

After this court denied review of petitioner's direct appeal, petitioner filed the present claim for post-conviction relief. Petitioner alleged that his trial counsel had been constitutionally inadequate and ineffective in failing to move

to suppress certain evidence that petitioner contended had been illegally seized, and he sought the remedy of a new trial.

The state moved to dismiss the petition under the so-called "former fugitive doctrine," arguing that it would be prejudiced in any retrial by the delay caused by petitioner's years as a fugitive. The post-conviction court granted the state's motion, relying on the Court of Appeals' conclusion in *Sills I* that it would be inequitable to allow petitioner a new trial given the prejudice to the state in any retrial. The post-conviction court concluded "that the reasons set forth in [*Sills I*] are equally applica[ble]—if not greater—in this post-conviction case."[1]

Petitioner appealed that decision to the Court of Appeals, which affirmed without opinion. *Sills II*, 311 Or App 39. We allowed petitioner's petition for review of that decision.

## II.   DISCUSSION

The "former fugitive doctrine," on which the post-conviction court relied to justify the dismissal in this case, refers to a common-law principle—which the Court of Appeals has adopted—under which an appellate court will dismiss the direct appeal of a defendant who is no longer a fugitive if the former fugitive status "significantly interfered with the appellate process." *See State v. Lundahl*, 130 Or App 385, 390, 882 P2d 644 (1994) (announcing that dismissal of direct appeal was appropriate as a "sanction" for a defendant who had fled the country and was a fugitive for seven years while the case was pending in the trial court); *see also State v. Ristick*, 204 Or App 626, 628, 131 P3d 762 (2006) (describing *Lundahl* as having "first announced" for Oregon the rule "now known as the 'former fugitive rule'").

---

[1] The post-conviction court added that it was granting the state's motion to dismiss because "petitioner has not advanced any argument as to why the former fugitive doctrine should not apply in this case." Petitioner, indeed, failed to supply the post-conviction court with some of the specific arguments that he advances in this court for declining to apply the fugitive dismissal rule. But he has contended throughout that the rule should not be extended to post-conviction cases like his.

The state urges this court likewise to adopt the "former fugitive doctrine" and, moreover, to extend the doctrine beyond the context of direct appeals to cases—like this case—in which a post-conviction petitioner was a fugitive during the time that his criminal case was pending in the trial court. According to the state, the "former fugitive doctrine" is a "corollary" to the current-fugitive dismissal rule, which this court long ago endorsed. *See State v. Broom*, 121 Or 202, 210, 253 P 1044 (1927) (holding that "we have the power, in our discretion, to dismiss the appeal where the appellant is a fugitive from justice").

The "fugitive dismissal rule" (sometimes also called the "fugitive disentitlement doctrine") dates to the late nineteenth century. *State v. Moss*, 352 Or 46, 50, 279 P3d 200 (2012); *see Smith v. United States*, 94 US 97, 97, 24 L Ed 32 (1876) (announcing that court considered it within its "discretion to refuse to hear a criminal case in error, unless the convicted party, suing out the writ, is where he can be made to respond to any judgment we may render"). It is sometimes described as an "equitable" rule, but it is based on the principle that "appellate courts possess inherent authority to dismiss a defendant's appeal if that defendant has absconded from the court's jurisdiction." *See Moss*, 352 Or at 50-51.[2]

Petitioner urges this court to conclude that the rationales underlying the common-law fugitive dismissal rule either do not justify extending the rule in Oregon to former fugitives or do not justify extending the rule to post-conviction cases filed by former fugitives. Finally, petitioner argues in the alternative that, even if some of the justifications for the rule could support dismissal of a post-conviction petition in some cases, dismissal was not justified in this case. Whether to adopt the former fugitive doctrine of dismissal and whether to extend it beyond the context of direct appeals are both questions of first impression for this

---

[2] A version of the fugitive dismissal doctrine has been formalized in the Oregon Rules of Appellate Procedure at ORAP 8.05(3), which permits a respondent on appeal to move for dismissal—and the court to order dismissal—if an appellant "escapes or absconds" and is still "on escape or abscond status at the time the court decides the motion." But the threshold requirement of ORAP 8.05(3) is not met here, because petitioner is not currently on escape or abscond status. Moreover, the Oregon Rules of Appellate Procedure apply only to proceedings in the appellate courts. ORAP 1.05.

court.[3] But they are questions that we leave for another day, because we agree with petitioner's alternative argument. As we explain below, even assuming that a petitioner's former fugitive status might sometimes justify a post-conviction court refusing to carry out the statutorily prescribed post-conviction relief process, dismissal of a petition for post-conviction relief is not justified when the basis for dismissal is prejudice that (1) would arise only in a later proceeding before a different court; (2) is contingent on petitioner first establishing that he is entitled to post-conviction relief; and (3) would involve only the kind of generic delay-based impact on witness testimony that the post-conviction process already contemplates.

## A.   *Justifications for the Fugitive Dismissal Rule*

Courts have offered a number of justifications for the fugitive dismissal rule, most of which relate to the dignity and efficient functioning of the court before which the case is pending. For example, the earliest justification for the rule was premised on the practical concern that any judgment by the appellate courts might be unenforceable against a fleeing defendant—whether or not the appellate court reversed the conviction. *Moss*, 352 Or at 51 (quoting *Smith*, 94 US at 97, for the proposition that "'[i]t is clearly within our discretion to refuse to hear a criminal case in error, unless the convicted party *** is where he can be made to respond to any judgment we may render'" (alteration in *Moss*)). As the United States Supreme Court reasoned in *Smith*:

"If we affirm the judgment, [the defendant] is not likely to appear to submit to his sentence. If we reverse it and order a new trial, he will appear or not, as he may consider

---

[3] In such decisions as *Lundahl* and *Ristick*, the Court of Appeals may have understood this court's discussion in *Broom* as meaning that a former fugitive must have voluntarily surrendered to avoid dismissal of the appeal. *See Moss*, 352 Or at 54-55 (discussing *Broom*, 121 Or at 206-07, and *State v. Sterner*, 124 Or App 439, 441, 862 P2d 1321 (1993), *rev den*, 318 Or 583 (1994)). But *Broom* addressed only the court's authority to dismiss the appeal of a current fugitive's appeal and the rationales for doing so. 121 Or at 206; *see also id.* at 209 (reasoning that, "to announce a doctrine that the criminal may flee to parts unknown after giving a bail bond, and there await the action of the appellate court on his appeal, would be virtually to put it within the power of the man of means to avoid the penalties fixed by law").

most for his interest. Under such circumstances, we are not inclined to hear and decide what may prove to be only a moot case."

94 US at 97. This court relied on *Smith*'s articulation of the enforceability rationale when announcing nearly a century ago that it was "unqualifiedly committed" to the rule that, when "a convicted criminal has fled from the jurisdiction of the court, it is within the power of that court to refuse to hear his appeal." *Broom*, 121 Or at 206, 210.[4]

In addition to the enforceability concern that this court highlighted in *Broom*, some courts justify the dismissal of a fugitive's direct appeal based on concerns about other ways in which fugitive status may directly implicate the integrity and function of the appellate court, such as deterring flight from the appellate court's jurisdiction and punishing disrespect for the dignity of the court. *See Ortega-Rodriguez v. United States*, 507 US 234, 242, 113 S Ct 1199, 122 L Ed 2d 581 (1993) (explaining that, "[i]n addition to addressing the enforceability concerns identified in *Smith*, *** dismissal by an appellate court after a defendant has fled its jurisdiction serves an important deterrent function and advances an interest in efficient, dignified appellate practice"). Dismissal to address those concerns is sometimes described as a doctrine of "disentitlement"—"that absconding from an appellate court's jurisdiction *** 'disentitles the defendant to call upon the resources of the Court for determination of his claims.'" *Moss*, 352 Or at 51 (emphasis omitted; quoting *Molinaro v. New Jersey*, 396 US 365, 366, 90 S Ct 498, 24 L Ed 2d 586 (1970)); *see, e.g.*, *Degen v. United States*, 517 US 820, 824, 116 S Ct 1777, 135 L Ed 2d 102 (1996) (explaining that "[d]isentitlement discourages the felony of escape and encourages voluntary surrenders and promotes the efficient dignified operation of the courts" (internal quotation marks and citation omitted)).

As the Court observed in *Ortega-Rodriguez*, however, those "justifications are necessarily attenuated when

---

[4] In one earlier case, *City of Portland v. Parchen*, 113 Or 209, 231 P 980 (1925), this court had relied on the fugitive dismissal doctrine as an alternative holding, but without citation to authority. *Id*. at 210 ("It is a substantial and just rule that courts will not hear an appeal while the appellant is fleeing from justice, and this, of itself, would be sufficient reason for dismissing this appeal.").

applied [by a reviewing court] to a case in which both flight and recapture occur while the case is pending before" the criminal trial court. 507 US at 244.[5] And neither the post-conviction court nor the state has sought to justify the dismissal of petitioner's case on the basis of one of those rationales.

### B.   *Prejudice on Retrial as a Justification for Dismissal*

The post-conviction court here relied on a single justification for dismissing this petition: that petitioner's flight so delayed his sentencing and appeal that the state would be prejudiced in any retrial that the post-conviction court might order. In doing so, the court relied on the reasoning of *Sills I*, that it would be inequitable to allow petitioner a new trial because the state would face significant obstacles in any retrial as a result of the substantial delay that petitioner caused through his flight from justice. *See* 260 Or App at 392. Before this court, the state also relies entirely on the prejudice justification and the analysis of the Court of Appeals in *Sills I*. As explained next, the Court of Appeals' reliance on prejudice to the state as justification for refusing to consider the assignments of error that might have required a new trial derived from *dictum* in *Ortega-Rodriguez*, 507 US 234. *Sills I*, 260 Or App at 390-91 (relying on *Lundahl*, 130 Or App at 390, and explaining that *Lundahl* relied on *Ortega-Rodriguez*).

The defendant in *Ortega-Rodriguez* had fled while his criminal case was pending in the United States District Court. 507 US at 237. After his recapture, he was sentenced, and he appealed to the Eleventh Circuit Court of Appeals. *Id*. at 238-39. On the government's motion, that court had dismissed his appeal under circuit authority that extended the fugitive dismissal doctrine to all appeals by

---

[5] The Court in *Ortega-Rodriguez* emphasized that, if a criminal defendant's period of fugitive status occurs entirely while the case is pending in the trial court, then the case "presents no risk of unenforceability" of any judgment by a reviewing court, 507 US at 244; any "contemptuous disrespect manifested by" the defendant's flight is directed at the trial court and best addressed by that court, *id*. at 246; and any concerns about deterring or punishing flight is better addressed by the trial court, which can deter flight "with the threat of a wide range of penalties available to" it and, if flight occurs, is "well situated to impose an appropriate punishment," *id*. at 247.

former fugitives. *Id*. at 239. The Supreme Court vacated and remanded, holding that the rule reached too broadly because, "when a defendant's flight *and recapture* occur before appeal, the defendant's former fugitive status may well lack the kind of connection to the appellate process that would justify an appellate sanction of dismissal." *Id*. at 251 (emphasis added). The Court emphasized that "the justifications we have advanced for allowing appellate courts to dismiss pending fugitive appeals all assume some connection between a defendant's fugitive status and the appellate process, sufficient to make an appellate sanction a reasonable response." *Id*. at 244 (footnote omitted). And without "the kind of connection to the appellate process that would justify an appellate sanction of dismissal," the Court concluded, "fugitivity while a case is pending before a district court *** is best sanctioned by the district court itself." *Id*. at 251. The holding in *Ortega-Rodriguez*—that former fugitive status, alone, is insufficient to justify dismissing an appeal, *id*. at 249—does not support extending the fugitive dismissal rule to cases filed by former fugitives.

In rejecting the Eleventh Circuit's rule, however, the Court acknowledged that there could be circumstances under which a flight that predated the appeal "might have an impact on the appellate process sufficient to warrant an appellate sanction," and for that reason, the Court declined to "hold that a court of appeals is entirely without authority to dismiss an appeal because of fugitive status predating the appeal." *Id*. at 249. The Court offered as an example a scenario that had been of concern to the Eleventh Circuit when it adopted its overly broad rule:

> "[A] long escape, even if ended before sentencing and appeal, may so delay the onset of appellate proceedings that the Government would be prejudiced in locating witnesses and presenting evidence at retrial after a successful appeal."

*Id*. (citing *United States v. Holmes*, 680 F2d 1372, 1374 (11th Cir 1982), *cert den*, 460 US 1015 (1983)). The Court suggested that such a "problem *might*, in some instances, make dismissal [of the appeal] an appropriate response." *Id*. (emphasis added). As explained above, that *dictum* in *Ortega-Rodriguez* was the source for the Court of Appeals'

"former fugitive doctrine" and its conclusion in *Sills I* that the risk of prejudice to the state in a retrial justified "dismissal of his appeal to the extent he seeks reversal of his convictions and a new trial." 260 Or App at 392.

The Court in *Ortega-Rodriguez* emphasized, however, that not every delay during trial court proceedings has "the kind of connection to the appellate process that would justify an appellate sanction of dismissal." 507 US at 251; *see also id*. at 250 n 23 (explaining that "[t]he problem with" the Eleventh Circuit's rule, that former fugitive status is always a sufficient basis for dismissing a subsequent appeal, was "that it reaches too many appeals—including those of defendants whose former fugitive status in no way affects the appellate process"). That discussion in *Ortega-Rodriguez* articulates an important caution with which we agree. Whatever merit there may be to dismissing a former fugitive's challenge to a conviction out of concern that the state would be prejudiced in any retrial, the prejudice must have "the kind of connection" to the proceedings that would justify the reviewing court refusing to carry out a process to which the former fugitive is statutorily entitled. *See id*. at 251. And we conclude that the prejudice on which the state relies here lacks "the kind of connection" to the post-conviction process that could justify dismissal without reaching the merits of a petition for post-conviction relief.

The prejudice to which the state has pointed is the prejudice that the Court of Appeals in *Sills I* identified as "significant obstacles" to presenting witness testimony in any retrial. 260 Or App at 392. As described by the court in *Sills I*, "the state had called a total of 21 witnesses at the original trial," and, "[e]ven if the state could find all of those witnesses—now 13 years later—the testimony of those witnesses has likely been affected by the protracted delay caused by defendant." *Id*. Moreover, "if a new trial were granted, the jury may react differently to the testimony of the now older victims [and other witnesses] than they would have to the testimony of 14-year-olds." *Id*. at 392-93.[6]

_____

[6] The Court of Appeals in *Sills I* also reasoned that "arranging the transfer of defendant from California to Oregon to stand trial would require delay and expense to the state that is inequitable considering that defendant's fugitive status caused his absence." 260 Or App at 393. Both the post-conviction court and

This case does not concern whether those sources of potential prejudice justified dismissal of petitioner's direct appeal, and we will not revisit that question eight years after we denied review in *Sills I*. But a post-conviction case differs in significant ways from the underlying criminal case, and we conclude that the delay caused by petitioner's flight from justice lacks the "kind of connection" to the post-conviction proceedings that could justify dismissal of his claim for post-conviction relief. *See Ortega-Rodriguez*, 507 US at 251.

Unlike a criminal trial, in which the state bears the burden to prove the elements of the charged crimes beyond a reasonable doubt, and unlike a direct appeal, which is resolved on the basis of arguments about the existing trial court record, the nature of a claim for post-conviction relief requires a petitioner to come forward with evidence to prove the elements of the statutory claim. *See Ogle v. Nooth*, 355 Or 570, 589, 330 P3d 572 (2014) (explaining that statute specifying contents of a post-conviction petition "requires a petitioner to attach materials, including the petitioner's own averments of fact, that address each element of each asserted ground for relief and that, considered together, and if substantiated at the post-conviction hearing, would permit the post-conviction court to determine that the petitioner was entitled to post-conviction relief on that ground"). To prevail on his claim that he was denied constitutionally adequate assistance of counsel, petitioner is required to show "by a preponderance of the evidence that counsel failed to exercise reasonable professional skill and judgment, and that [petitioner] was prejudiced as a result." *Farmer v. Premo*, 363 Or 679, 690, 427 P3d 170 (2018). If he prevails on that claim, it will be because he has established that the original trial involved such a "substantial denial" of

---

the state rely on that expense as a justification for dismissing the post-conviction petition. And, indeed, the record suggests that petitioner was still incarcerated in California at the time of the post-conviction hearing, which was held in 2019. But the state acknowledges that it offered no evidence that petitioner will still be incarcerated in California by the time of any new trial that a post-conviction court might order, and the statements in *Sills I* suggest that he may not be. *See id.* at 387 (explaining that petitioner was "sentenced in California in December 2008, with his earliest parole date in 2021"); *see also id.* at 389 (quoting state as having advised the court that defendant was completing his "12-year sentence" in California).

his constitutional rights that his conviction is rendered void. ORS 138.530(1)(a).

Given that nature of the underlying proceeding here, petitioner contends, any prejudice in the post-conviction court arising from petitioner's former-fugitive status will be to *petitioner's* ability to prove his claim, not to the state's defense of the claim. Indeed, the state does not contend that the delay attributable to petitioner's flight from justice in the trial court has any bearing on the alleged inadequacy of petitioner's trial counsel or any impact on the state's ability to defend against that allegation in the post-conviction court.[7]

Instead, the state argues only that the flight-based delay may cause prejudice to the state *after* the post-conviction proceedings have concluded—prejudice that would manifest itself only if petitioner proved the merits of his claim *and* if the post-conviction court then granted the remedy of a new trial. But the contingent "prejudice" that the state has identified—delay-based obstacles to the presentation of evidence in a new trial—is a risk that is inherent whenever a post-conviction court determines that a petitioner suffered such a "substantial denial" of constitutional rights that the petitioner's conviction is rendered void. The legislature has specified that such petitioners are entitled to relief and that appropriate relief may include a new trial. ORS 138.530(1)(a); *see also* ORS 138.520.[8] Yet the post-conviction process that the legislature has created almost guarantees that any new trial will follow a substantial

---

[7] Before the post-conviction court, the state had argued that the flight-related delay affected its ability to defend against the allegation of ineffective assistance because petitioner's criminal trial counsel had died. But the state offered no evidence that trial counsel would have been available absent the flight-related delay, and the trial court did not rely on that alleged source of prejudice.

In this court, petitioner has represented that trial counsel died in November 2000, only five months after the date of the criminal trial. A declaration in the record supports that assertion, and the state does not argue on review that the loss of trial counsel as a witness for the post-conviction case can be attributed to the flight-related delay.

[8] The legislature has specified that, when a petitioner establishes entitlement to post-conviction relief, "[t]he relief which a court may grant or order *** shall include release, new trial, modification of sentence, and such other relief as may be proper and just." ORS 138.520.

period of delay. Post-conviction cases generally may be filed up to two years after a conviction became final on appeal, ORS 138.510(3),[9] and the appeal process itself can take several years—more if the first appeal produces a remand. Moreover, the post-conviction process is sometimes available long after a first appeal is final if a change in the law creates "grounds for relief * * * which could not reasonably have been raised in the original or amended petition." ORS 138.510(3); *see also* ORS 138.550(3) (to same effect); *White v. Premo*, 365 Or 1, 11, 443 P3d 597 (2019), *cert dismissed sub nom Kelly v. White*, ___ US ___, 140 S Ct 993 (2020) (concluding that post-conviction petitioner could raise new argument that relied on case decided 17 years after petitioner had been convicted). The rules of evidence partly ameliorate the kind of prejudice that parties can sometimes suffer in a retrial years after the original trial.[10] But, in any event, some delay-based prejudice is an inherent risk of a statutory process that expressly authorizes a post-conviction court to order a new trial, given the delay that the post-conviction process contemplates.

The state has not argued that the prejudice that it might face if a retrial is ultimately ordered in this case—prejudice based on the delay between the time of petitioner's

---

[9] ORS 138.510(3) provides, in part:

"A petition pursuant to ORS 138.510 to 138.680 must be filed within two years of the following, unless the court on hearing a subsequent petition finds grounds for relief asserted which could not reasonably have been raised in the original or amended petition:

"(a) If no appeal is taken, the date the judgment or order on the conviction was entered in the register.

"(b) If an appeal is taken, the date the appeal is final in the Oregon appellate courts.

"(c) If a petition for certiorari to the United States Supreme Court is filed, the later of:

"(A) The date of denial of certiorari, if the petition is denied; or

"(B) The date of entry of a final state court judgment following remand from the United States Supreme Court."

[10] OEC 804(3)(a) provides that testimony given in a prior proceeding is admissible if the witness is unavailable and the opposing party had the opportunity to cross-examine the witness. A witness will be considered unavailable for a number of reasons, including that the witness cannot be located despite reasonable efforts, OEC 804(1)(e), and that the witness testifies to no longer having a memory of the subject, OEC 804(1)(c).

original trial and the time of any retrial—is different in nature or quality from the prejudice that the state may face after any other post-conviction proceeding. But the state urges us to view the delay-based impairment in a retrial as, nevertheless, inequitable given petitioner's contribution to the delay. We are not persuaded. We emphasize that, in this post-conviction case, retrial could be ordered only if petitioner establishes that his criminal trial involved such a "substantial denial" of constitutional rights that his conviction is rendered "void," and only because the legislature has directed that post-conviction relief "shall be granted by the court" to such a petitioner. ORS 138.530(1)(a). Given those requirements, any invocation of "equity" to deny relief must be based—at a minimum—on more than the generic, delay-based prejudice that the state identifies. As the Court observed in *Ortega-Rodriguez*, if we assume that there is merit to petitioner's allegations, then dismissing his petition because of his former fugitive status "is tantamount to an additional punishment \*\*\* for the same offense of flight" that the trial court was well-equipped to address. *See* 507 US at 248.

In sum, we conclude that the post-conviction court erred in dismissing petitioner's petition for post-conviction relief based on the common-law fugitive dismissal rule.[11]

The decision of the Court of Appeals is reversed. The judgment of the circuit court is reversed, and the case is remanded to the circuit court for further proceedings.

---

[11] In addition to the claim alleged in his petition, petitioner filed a *pro se* motion asking the post-conviction court to direct his counsel to raise a number of other claims for relief or to appoint replacement counsel. To the extent that the post-conviction court relied on petitioner's former fugitive status to deny the *pro se* motion, that ruling was also error. But we otherwise express no opinion regarding the merits of petitioner's *pro se* motion.