No. 14          May 9, 2024          273

IN THE SUPREME COURT OF THE
STATE OF OREGON

STATE OF OREGON,
*Respondent on Review,*

*v.*

GENE RAYMOND SATTER,
*Petitioner on Review.*

(CC 09P50867; 20CR42984; 20CR45176)
(CA A175001 (Control); A175002; A175003) (SC S069880)

On review from the Court of Appeals.*

Argued and submitted May 16, 2023.

Nora E. Coon, Deputy Public Defender, Office of Public Defense Services, Salem, argued the cause and filed the briefs for petitioner on review. Also on the briefs was Ernest G. Lannet, Chief Deputy Defender.

Joanna L. Jenkins, Assistant Attorney General, Salem, argued the cause and filed the brief for respondent on review. Also on the brief were Ellen Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Flynn, Chief Justice, and Duncan, Garrett, DeHoog, James, and Masih, Justices, and Nakamoto, Senior Judge, Justice pro tempore.**

FLYNN, C.J.

The order of the Court of Appeals is reversed, and the case is remanded to the Court of Appeals for further proceedings.

---

* On review of Court of Appeals Order Denying Reconsideration, Erin C. Lagesen, Chief Judge (Sept 7, 2022), of Order of Dismissal, Theresa M. Kidd, Appellate Commissioner (July 8, 2022). Appeal from Polk County Circuit Court, Diane M. Morse, Judge.

** Bushong, J., did not participate in the consideration or decision of this case. Baldwin, Senior Judge, Justice pro tempore, participated in oral argument but did not participate in the consideration or decision of this case.

**FLYNN, C.J.**

After a jury found defendant guilty of driving under the influence of intoxicants, he fled the state. His flight delayed by more than 10 years the trial court's ability to impose a sentence and enter a judgment of conviction, which defendant then asked the Court of Appeals to reverse. The case comes to us because the Court of Appeals dismissed defendant's appeal based on concerns that the state would suffer delay-based prejudice in any retrial. The court relied on its "former fugitive doctrine," which presumes that an appellate court has inherent authority to dismiss a criminal defendant's direct appeal if the defendant formerly was a fugitive from justice and the flight "significantly interfered with the appellate process." *See Sills v. State of Oregon*, 370 Or 240, 244, 518 P3d 582 (2022) (explaining but not adopting doctrine). Although this court has long held that appellate courts possess the inherent authority to dismiss an appeal when the criminal defendant is a current fugitive, we have not endorsed the "former fugitive doctrine," and we decline the state's request to do so in this context.

We share the Court of Appeals' concerns about the consequences of a defendant's flight from justice in the event of a retrial and the disregard that the flight shows for the authority of Oregon courts. But because defendant's flight ended before his case moved to an appellate court, and the delay has not interfered with the appellate court's ability to address the merits of the appeal, we conclude that defendant's former fugitive status lacks the kind of connection to the appellate process that justifies an appellate court dismissing his direct appeal. Instead, concerns about potential prejudice that would arise in the trial court in relation to a retrial are most appropriately left for the trial court to address on any remand, should the Court of Appeals determine that a reversible error had occurred.

## I.  BACKGROUND

The facts relevant to our review are undisputed. A jury found defendant guilty of driving under the influence of intoxicants in 2009, and he failed to appear for his sentencing. He later sent a letter to the trial court announcing

that he had left Oregon and did not intend to return unless the court dismissed his conviction. However, defendant was eventually arrested in Oregon in 2020, permitting the court finally to impose sentence and enter the judgment for defendant's 2009 conviction.

Defendant appealed from that judgment, assigning error to the trial court's failure to caution the jury that a defendant's decision not to testify cannot be considered evidence of guilt. In response, the state asked the Court of Appeals to dismiss defendant's appeal under the former fugitive doctrine. Emphasizing that defendant had demanded a new trial more than a decade after his conviction, the state argued that the "passage of time has undoubtedly prejudiced the state by making it difficult if not impossible to locate witnesses and present evidence" and that "[d]efendant should not be allowed to benefit from his choice to flout the authority of the court by absconding and absenting himself from the jurisdiction for over ten-and-a-half years."

The Appellate Commissioner agreed and dismissed defendant's appeal. Relying on Court of Appeals' precedent, the Commissioner reasoned that the court has "inherent judicial authority" to dismiss a former fugitive's appeal when "the defendant's former fugitive status significantly interfered with the appellate process." The Commissioner concluded that dismissal of defendant's appeal was warranted because "(1) there ha[d] been a significant passage of time, caused by defendant, since the incident producing the challenged judgment of conviction; (2) that passage of time makes it difficult for the state to locate key witnesses; and (3) even assuming that those witnesses could be located, their memories of the events surrounding the crime at issue would have likely diminished." Defendant unsuccessfully sought reconsideration and then petitioned for review in this court, which we allowed.

## II.   DISCUSSION

The Court of Appeals has adopted two related doctrines under which it will dismiss a direct appeal to address a criminal defendant's flight from justice. The first is the "fugitive dismissal doctrine," which this court embraced

nearly a century ago, announcing that "it was 'unqualifiedly committed' to the rule that, when 'a convicted criminal has fled from the jurisdiction of the court, it is within the power of that court to refuse to hear his appeal.'" *Sills*, 370 Or at 247 (quoting *State v. Broom*, 121 Or 202, 210, 253 P 1044 (1927)); *see also State v. Moss*, 352 Or 46, 50-54, 279 P3d 200 (2012) (describing history of the fugitive dismissal doctrine). The second is the "former fugitive doctrine," on which the Court of Appeals relied to justify dismissing defendant's appeal. We have described that doctrine as a common-law principle "under which an appellate court will dismiss the direct appeal of a defendant who is no longer a fugitive if the former fugitive status significantly interfered with the appellate process." *Sills*, 370 Or at 244 (internal quotation marks omitted).

This court has yet to decide whether to embrace that common-law doctrine for Oregon appellate courts. *See id.* at 245-46 (declining to address "[w]hether to adopt the former fugitive doctrine"). But we limited the possible applications of the doctrine in *Sills*. That case involved a statutory claim for post-conviction relief filed by a petitioner who had been a fugitive from justice during the underlying criminal trial, resulting in delay that, the state contended, would prejudice it in any retrial. In that context, we held that the state's concerns about delay-based prejudice on retrial did not justify dismissing the petitioner's claim for relief, because the identified prejudice lacked "the kind of connection to the proceedings that would justify the reviewing court refusing to carry out a process to which the former fugitive is statutorily entitled." *Id.* at 250 (internal quotation marks omitted).

In reaching that conclusion, however, we noted differences between a claim for post-conviction relief and a direct appeal, including that the post-conviction relief statutory process contemplates delay. *Id.* at 252-53; *see also id.* at 254 (emphasizing that the post-conviction court could order a retrial only if the petitioner established "such a substantial denial of constitutional rights that his conviction is rendered void" (internal quotation marks omitted)). And we expressly did not consider whether a defendant's former fugitive status could ever justify dismissing a direct appeal

in order to prevent prejudice in any retrial. *Id*. at 245-46. That question is now squarely presented by the parties' arguments in this case.

According to the state, appellate courts have inherent authority to dismiss an appeal under the former fugitive doctrine to ensure "the dignity, integrity, and efficient functioning of the appellate process," a proposition for which it relies on the United States Supreme Court's decision *Ortega-Rodriguez v. U.S.*, 507 US 234, 113 S Ct 1199, 122 L Ed 2d 581 (1993), and its progeny. In particular, the state cites cases from other jurisdictions that have "relied on the former fugitive doctrine to dismiss appeals where a lengthy flight has so delayed the appeal that the state would be prejudiced in the event [of] a retrial." *See, e.g.*, *U.S. v. Sudthisa-Ard*, 17 F3d 1205, 1206 (9th Cir 1994). And the state asserts that dismissal of defendant's appeal was similarly justified based on "general delay-based prejudice"—that the "passage of time has undoubtedly prejudiced the state by making it difficult if not impossible to locate witnesses and present evidence."

The state in this court also raises new and more specific reasons that, it argues, would cause prejudice in the event of a retrial. According to the state, one of the officers who testified in the original trial died in 2012, the other officer no longer works in law enforcement, and the state has been unable to locate the video from the traffic stop or the police reports associated with defendant's case. The state also now argues that it is unlikely "that defendant will appear for retrial," which the state contends raises concerns that the trial court would be unable to enter an enforceable judgment if defendant's case were sent back for a new trial.

Defendant contends that the Court of Appeals erred in dismissing his appeal. According to defendant, although an appellate court may have inherent authority to take certain actions necessary to perform its judicial function, that authority does not extend to dismissing a direct appeal in order to address the appellant's flight from the jurisdiction of the trial court. Alternatively, defendant argues, even if this court agrees that appellate courts have some authority to dismiss an appeal because of an appellant's former fugitive status, we should conclude that the Court of Appeals did

not properly exercise that authority when it dismissed defendant's appeal to address prejudice that the state claimed would arise on remand. According to defendant, if former fugitive status is ever a basis to deny a new trial to a defendant whose original trial included reversible error, then that decision should be made by the trial court on remand, following a hearing at which the state would be required to prove that the defendant's former fugitive status will cause actual prejudice to a retrial. *See, e.g.*, *State v. Baughman*, 361 Or 386, 410-11, 393 P3d 1132 (2017), *abrogated in part on other grounds by State v. Jackson*, 368 Or 705, 498 P3d 788 (2021) (describing a similar process of reversal and remand for a post-remand hearing at which the trial court would determine whether a new trial was "necessary or appropriate").

Given the parties' framing of the dispute, we assume without deciding that the Court of Appeals has inherent authority to dismiss a defendant's appeal when the defendant's former fugitive status "significantly interfered with the appellate process."[1] *Sills*, 370 Or at 244; *see also id.* at 245-46 (declining to decide whether to adopt that formulation of the former fugitive doctrine). And we accept the state's premise that prejudice resulting from a criminal defendant's former flight from justice sometimes will justify denying the defendant a new trial. As we will explain, however, when the fugitive status is confined to the trial court and the identified prejudice will arise only on remand, the defendant's flight lacks "'the kind of connection'" to the appellate process that would justify *an appellate court* "refusing to carry out a process to which the former fugitive is statutorily entitled." *Id.* at 250 (quoting *Ortega-Rodriguez*, 507 US at 251).

We are persuaded that defendant's alternative argument describes the proper exercise of an appellate court's authority in such cases: When confronted with concerns that

---

[1] In defendant's briefing to this court, he also argued that any inherent authority that an appellate court possesses to dismiss a defendant's appeal under the former fugitive doctrine has been constrained by the Oregon Rules of Appellate Procedure (ORAPs) and by the defendant's statutory right to an appeal in the Court of Appeals. We understand defendant to have abandoned those arguments at oral argument. And our determination that the Court of Appeals did not properly exercise its inherent authority in this case makes it unnecessary to determine whether that authority is further limited by rule or statute.

a defendant's former flight from the jurisdiction of the trial court would cause actual prejudice in any retrial, or that the defendant might again fail to appear for any retrial, the Court of Appeals should nevertheless proceed to the merits of the appeal, leaving those concerns to be addressed by the trial court on any remand, as the trial court will be in a superior position to resolve factual disputes and tailor an appropriate remedy—including by determining that actual prejudice to the state justifies denying the defendant a new trial and reinstating the original judgment. Accordingly, we reverse the order of the Court of Appeals and remand for consideration of the merits of defendant's appeal.

This court recently discussed the origins and justifications of the former fugitive doctrine in *Sills*. We observed that the former fugitive doctrine is sometimes described as a "corollary" to the fugitive dismissal doctrine, which to reiterate, allows appellate courts to refuse to hear the appeal of a defendant who is currently a fugitive from justice. 370 Or at 244-45. We also explained that, in extending the fugitive dismissal doctrine to defendants whose flight and recapture both occurred before they initiated their appeal, the Court of Appeals had relied on *dicta* in the Supreme Court's *Ortega-Rodriguez* decision. *Id*. at 248. This court likewise relied on *Ortega-Rodriguez* on review in *Sills*, but for a different purpose: to explain our conclusion that the state's generic claim of delay-based prejudice lacked "'the kind of connection'" to the post-conviction relief "proceedings that would justify the reviewing court refusing to carry out a process to which the former fugitive is statutorily entitled." *Id*. at 250 (quoting *Ortega-Rodriguez*, 507 US at 251). Accordingly, we describe *Ortega-Rodriguez* in detail, and then turn back to *Sills*.

In *Ortega-Rodriguez*, the Supreme Court held that the federal circuit court erred in applying a blanket rule of dismissal to all appeals filed by former fugitives—those who had fled while their case was pending in the trial court but had been recaptured before sentencing and appeal. 507 US 234. The Court began its analysis by discussing the various rationales that it had previously offered to justify dismissals in cases pursued by defendants who were *current* fugitives while their cases were pending in an appellate court. Those

rationales included the concern that any judgment that the Court issued would be unenforceable against the defendant; the theory that flight "disentitles" the defendant to "call upon the resources of the Court" such that their flight is construed as "tantamount to waiver or abandonment" of their appeal; and the belief that dismissal "serves an important deterrent function and advances an interest in efficient, dignified appellate practice." *Id*. at 239-42 (internal quotation marks omitted).

The Court then explained that those rationales "all assume some connection between a defendant's fugitive status and the appellate process, sufficient to make an appellate sanction a reasonable response." *Id*. at 244. And the Court explained that those "justifications are necessarily attenuated when * * * a defendant's fugitive status at no time coincides with [their] appeal." *Id*. For example, the Court reasoned that a "defendant returned to custody before [they] invoke[] the appellate process presents no risk" that the judgment of the reviewing court will be unenforceable, and a flight that ends before an appeal is filed is unlikely to cause delay or otherwise interfere with the appellate process. *Id*. at 244. In addition, the Court observed that, to the extent dismissal is justified as a sanction on the theory that the defendant's "flight operates as an affront to the dignity of the court's proceedings," it is the trial court that "has the authority to defend its own dignity, by sanctioning an act of defiance that occurred solely within its domain." *Id*. at 246. Finally, to the extent that dismissal is used as a sanction to deter or punish escape, the court emphasized that those goals are better addressed by the trial court, which can deter flight "with the threat of a wide range of penalties available to" it. *Id*. at 247.

Ultimately, the Court concluded that, "[a]bsent some connection between a defendant's fugitive status and [their] appeal, as provided when a defendant is at large during the ongoing appellate process, the justifications advanced for dismissal of fugitives' pending appeals generally will not apply." *Id*. at 249 (internal quotation marks and citation omitted). And without "the kind of connection to the appellate process that would justify an appellate sanction of

dismissal," the Court concluded, "fugitivity while a case is pending before a [trial] court *** is best sanctioned by the [trial] court itself." *Id.* at 251.

The Court in *dicta*, however, allowed for "the possibility that some actions by a defendant, though they occur while [their] case is before the [trial] court, might have an impact on the appellate process sufficient to warrant an appellate sanction." *Id.* at 249. The Court offered as an example the possibility that "a long escape, even if ended before sentencing and appeal, may so delay the onset of appellate proceedings that the Government would be prejudiced in locating witnesses and presenting evidence at retrial after a successful appeal," which the Court suggested "might, in some instances, make dismissal an appropriate response." *Id.* And the Court declined to "hold that a court of appeals is entirely without authority to dismiss an appeal because of fugitive status predating the appeal." *Id.*

As we explained in *Sills*, that *dicta* from *Ortega-Rodriguez* was the authority to which the Court of Appeals pointed in adopting its "former fugitive doctrine." 370 Or at 248. But it was the reasoning and ultimate holding of *Ortega-Rodriguez* that this court relied on in *Sills* to explain our conclusion that the lower courts were not justified in applying the former fugitive doctrine to dismiss the petitioner's claim for post-conviction relief.

The petitioner in *Sills*, like defendant here, fled the state immediately after his conviction and had remained in fugitive status for a decade before being returned to Oregon for sentencing. *Id.* at 242-43. As mentioned above, when that petitioner later pursued a collateral claim for post-conviction relief, the post-conviction court invoked the former fugitive doctrine to dismiss that claim, and the Court of Appeals affirmed. *Id.* at 243-44. This court accepted review and reversed. *Id.* at 254.

In doing so, we agreed with the Court's observation in *Ortega-Rodriguez* that the rationales underlying the fugitive dismissal doctrine "'are necessarily attenuated when applied [by a reviewing court] to a case in which both flight and recapture occur while the case is pending before' the criminal

trial court." *Id*. at 247-48 (quoting *Ortega-Rodriguez*, 507 US at 244 (brackets in *Sills*)); *see also id*. at 249 (observing that the Court in *Ortega-Rodriguez* had held that "former fugitive status, alone, is insufficient to justify dismissing an appeal"). And we emphasized that nothing about the holding of *Ortega-Rodriguez* "support[s] extending the fugitive dismissal rule to cases filed by former fugitives." *Id*.

We assumed "that a petitioner's former fugitive status might sometimes justify a post-conviction court refusing to carry out the statutorily prescribed post-conviction relief process," but we emphasized an "important caution" from the Court in *Ortega-Rodriguez:* "[N]ot every delay during trial court proceedings has 'the kind of connection to the appellate process that would justify an appellate sanction of dismissal.'" *Sills*, 370 Or at 246, 250 (quoting *Ortega-Rodriguez*, 507 US at 251). We agreed with that caution and rephrased it to address the post-conviction relief process, explaining that, "[w]hatever merit there may be to dismissing a former fugitive's challenge to a conviction out of concern that the state would be prejudiced in any retrial," the claimed prejudice "must have 'the kind of connection' to the proceedings that would justify the reviewing court refusing to carry out a process to which the former fugitive is statutorily entitled." *Id*. at 250 (quoting *Ortega-Rodriguez*, 507 US at 251).

We allowed for the possibility—as had the Court in *Ortega-Rodriguez*—"that there could be circumstances under which a flight that predated the appeal 'might have an impact on the appellate process sufficient to warrant an appellate sanction.'" *Id*. at 245-46, 249 (quoting *Ortega-Rodriguez*, 507 US at 249). But we explained that the prejudice on which the state had relied in *Sills* consisted of obstacles to presenting witness testimony in any retrial due to fading memories after the passage of 13 years and aging of the child victims. *Id*. at 250. And we concluded that the identified prejudice lacked "'the kind of connection' to the post-conviction process that could justify dismissal without reaching the merits of a petition for post-conviction relief." *Id*.

Thus, although both *Sills* and *Ortega-Rodriguez* recognized the possibility that there might be circumstances under which a former fugitive's flight during trial court proceedings has had an impact on the appellate court proceedings sufficient to justify dismissal of the defendant's appeal, neither court endorsed any particular circumstance under which a concluded period of flight *would* have sufficient impact on the appellate process to justify dismissal of the defendant's appeal. Both opinions emphasized that the rationales that justify dismissal when the defendant is a current fugitive "are necessarily attenuated" when "both flight and recapture occur while the case is pending before" the trial court. *Sills*, 370 Or at 247-48; *Ortega-Rodriguez*, 507 US at 244. And *Sills* specifically concluded that general, "delay-based obstacles to the presentation of evidence in a new trial" did not justify invoking the former fugitive doctrine to dismiss the petitioner's claim for post-conviction relief. *Sills*, 370 Or at 252.

Nevertheless, the state emphasizes *Sills*'s acknowledgment of that *possibility* to argue that dismissal of a direct criminal appeal is warranted when the defendant's former fugitive status affects the "dignity, integrity, and efficient functioning of the appellate process." And the state contends that those interests are adversely affected in this case in ways that are distinguishable from *Sills*.

First, the state argues that the nature of a direct appeal makes its general, delay-based claim of prejudice more significant than they were in *Sills*. The state emphasizes that this court in *Sills* described delay-based prejudice as "a risk that is inherent" in post-conviction relief proceedings, *id*. at 252, and described other characteristics of post-conviction relief that, the state contends, might make the risk of retrial prejudice in those cases distinguishable from retrial prejudice in a direct appeal. *See id*. at 254 (emphasizing "that, in this post-conviction case, retrial could be ordered only if petitioner establishes that his criminal trial involved such a substantial denial of constitutional rights that his conviction is rendered void, and only because the legislature has directed that post-conviction relief shall be granted by the court to such a petitioner" (internal quotation marks

omitted)). According to the state, those differences between direct criminal appeals and the post-conviction relief process weigh in favor of an appellate court dismissing an appeal to address general delay-based prejudice, especially when the state identifies actual prejudice from lost evidence.

Second, the state contends that it has identified concerns beyond the general, delay-based obstacles that were the source of the claim of prejudice in *Sills*. It emphasizes that—in this court—it has offered evidence that a key trial exhibit is missing. And it argues that defendant might again fail to appear if the original judgment is reversed. According to the state, "defendant is no longer in custody or under any form of supervision" and has "previously indicated" that "he had no intention of appearing in the case," and thus is likely to prevent entry of an enforceable judgment of conviction if the case is remanded for a new trial.

We are not persuaded that those differences between this case and *Sills* permit a different answer for defendant. We conclude that the Court of Appeals erred in dismissing defendant's appeal, because—despite the factual and procedural differences between this case and *Sills*—the concerns on which the state relies here similarly lack "'the kind of connection'" to appellate proceedings that justify the appellate court "refusing to carry out a process to which the former fugitive is statutorily entitled." *Sills*, 370 Or at 250 (quoting *Ortega-Rodriguez*, 507 US at 251).

Although *Sills* did not decide whether that standard would govern dismissals of direct appeals, we are persuaded by the reasoning of *Ortega-Rodriguez* that, even assuming appellate courts have inherent authority to dismiss a former fugitive's direct criminal appeal, an appellate court errs in relying on that authority to dismiss the appeal when the defendant's former fugitive status does not significantly interfere with the appellate process. And we conclude that neither the generic, delay-based prejudice on which the Court of Appeals based its dismissal, nor the state's new assertion of actual prejudice and concerns that defendant might again flee, has the kind of impact on the appellate

process that is required to justify dismissal.[2] We reach that conclusion for three reasons.

First, even the specific prejudice that the state identifies in this court would arise—if at all—only if the Court of Appeals reverses defendant's conviction and only after the case is remanded to the trial court. In other words, the state's assertion that it no longer has access to testimony and exhibits that it relied on in the original trial does not describe prejudice to the *appellate* proceedings, because defendant's claim of instructional error will be decided on a trial court record that undisputedly is complete. As *Ortega-Rodriguez* emphasized in explaining why it was vacating the dismissal, there was no "indication in the record below" that the "petitioner's former fugitivity was deemed to present an obstacle to orderly appellate review." 507 US at 251. Accordingly, we are not persuaded that defendant's former fugitive status affected the "dignity" or "integrity" of the *appellate* court or that the delay caused by his abscond was "sufficiently disruptive of the appellate process that dismissal would be a reasonable response." *Id.*

Second, all of the state's concerns about enforceability of the judgment are limited to enforceability in the trial court; defendant was returned to custody before invoking the jurisdiction of the Court of Appeals and served his sentence while this appeal proceeded. Thus, if the Court of Appeals affirms, the punishment for defendant's conviction has already been enforced. More significantly, however, if the Court of Appeals reverses and remands, any new failure to appear would be a flight from the jurisdiction of the trial court. Although we emphasize that any flight from

---

[2] Like the Court in *Ortega-Rodriguez*, "[w]e do not ignore the possibility that some actions by a defendant, though they occur while [their] case is before the [trial] court, might have an impact on the appellate process sufficient to warrant an appellate sanction." 507 US at 249; *see also id.* (opining that "a defendant's misconduct at the [trial] court level might somehow make meaningful appeal impossible, or otherwise disrupt the appellate process so that an appellate sanction is reasonably imposed" (internal quotation marks and citation omitted)). But we emphasize, as we did in *Sills*, that dismissal of a party's case under the former fugitive doctrine requires "'the kind of connection' to the proceedings that would justify the reviewing court refusing to carry out a process to which the former fugitive is statutorily entitled." *Sills*, 370 Or at 250 (quoting *Ortega-Rodriguez*, 507 US at 251).

justice—whether a flight that concluded prior to the appeal or a potential flight if the case is remanded—evinces a lack of respect for judicial authority, that disrespect is aimed most directly at the trial court when the defendant fails to appear in that court. *See Ortega-Rodriguez*, 507 US at 246 (emphasizing that the "contemptuous disrespect manifested by [the defendant's] flight was directed at the [trial court], before which his case was pending during the entirety of his fugitive period").[3]

And third, the trial court is a superior forum to resolve and address both the state's claim of prejudice in a retrial and any new failure to appear on remand. In this case, for example, the state asserts that it has been unable to locate the video or the police reports and that one of the testifying officers has since died. It also argues that the other officer is no longer working as a police officer and likely has a diminished memory. Although defendant acknowledges that the state *may* be able to prove its factual claim of actual prejudice, he emphasizes that the determination whether evidence has disappeared or witness memories faded is "the stuff of an evidentiary hearing, which trial courts routinely undertake." We agree. And conversely, appellate courts are ill equipped to undertake the factual inquiry necessary to determine the extent to which a period of flight will obstruct the state's ability to present evidence in a retrial.

Determining how to address actual prejudice to the state in a retrial is a task that is "the daily stuff of our trial courts." *See Baughman*, 361 Or at 410 (explaining that "fairly assessing how to ensure a fair trial for all parties" is "the daily stuff of our trial courts"). And only the trial court can address that prejudice with an appropriately calibrated response. *See Ortega-Rodriguez*, 507 US at 247 ("While an appellate court has access only to the blunderbuss of dismissal, the [trial] court can tailor a more finely calibrated response."); *see also Sills*, 370 Or at 253 (explaining that the trial court can use the rules of evidence to "partly ameliorate

---

[3] We emphasize that defendant's rejection of the authority of the trial court in this case demonstrates the kind of disregard for the rule of law that ultimately harms the entire justice system. We in no way condone that conduct in concluding that the Court of Appeals is not the appropriate body to address it.

the kind of prejudice that parties can sometimes suffer in a retrial years after the original trial"). Addressing prejudice with an appropriately calibrated response is critical because, as we observed in *Sills*, "if we assume that there is merit" to defendant's appeal, then dismissing that appeal "because of his former fugitive status 'is tantamount to an additional punishment *** for the same offense of flight'" that may be punishable as a separate crime. 370 Or at 254 (quoting *Ortega-Rodriguez*, 507 US at 248); *see also* ORS 162.195 (defining crime of second-degree failure to appear); ORS 162.155 (defining crime of second-degree escape).

The trial court also is uniquely equipped to address any new failure of defendant to appear on remand, just as it was equipped to address the original failure to appear, through its authority to hold a defendant in contempt or otherwise impose punitive sanctions. *See* ORS 33.105 (describing the contempt sanctions authorized by statute, including fines, confinement for up to six months, and probation or community service); *see also Ortega-Rodriguez*, 507 US at 247 ("While a case is pending before the [trial] court, flight can be deterred with the threat of a wide range of penalties available to the [trial] court judge.").

Thus, we conclude that neither concerns about the prejudice that the state claims will arise in a retrial nor a generalized interest in addressing defendant's flouting of judicial authority justified the Court of Appeals dismissing defendant's appeal to address a period of flight that began and ended while the case was pending in the trial court. Instead, we emphasize, as we have emphasized in other contexts, the value of leaving to the trial court on any remand those questions that a trial court is in the "best position to assess." *See Baughman*, 361 Or at 410-11 (concluding, in the context of evidentiary error, that the trial court on remand should determine "whether a new trial is required or appropriate"). In this context as well, it is the trial court on remand that should determine whether a defendant's former fugitive status caused prejudice that justifies denying the defendant a new trial.

Our opinion in *Baughman*, and an earlier opinion in *State v. Cartwright*, 336 Or 408, 85 P3d 305 (2004),

illustrate how an appellate court can instruct a trial court that additional remand proceedings are necessary to determine whether the defendant is entitled to a new trial. In *Baughman*, we concluded that the trial court had erred in analyzing whether evidence of the defendant's uncharged acts could be admitted, but we specified that the trial court on remand should conduct additional proceedings before deciding whether a new trial was "appropriate." 361 Or at 406, 410. Accordingly, we reversed the judgment of conviction and "remanded to the circuit court for further proceedings," consistent with the opinion. *Id*. at 411. *Baughman* modeled that remand approach on *Cartwright*, in which this court vacated the defendant's judgment of conviction, because we concluded that the trial court had committed reversible error by failing to require the state to produce evidence, but we remanded with instructions that the trial court address the state's contention that a new trial was unnecessary. 336 Or at 420-21. The opinion specifies that the trial court on remand would afford an opportunity for a hearing on whether there was any chance the evidence had affected the verdict and then either order a new trial or make findings to support reinstating the original judgment of conviction. *Id*. at 421.

## III.   CONCLUSION

In sum, we reverse the Court of Appeals' order dismissing defendant's appeal, because we conclude that the delay caused by defendant's former fugitive status lacked the required connection to the appellate process that would justify dismissing the appeal. Although we accept the state's premise that a defendant's former fugitive status may cause such significant prejudice to the state that denying the defendant a new trial could be justified, we conclude that the trial court on any remand would be the appropriate court to make that determination. We emphasize, however, that, if the Court of Appeals determines that the trial court committed reversible error, nothing in this opinion precludes the Court of Appeals from remanding with instructions for the trial court to determine whether actual prejudice to the state in a retrial justifies denying the defendant a new trial and reinstating the judgment of conviction.

The order of the Court of Appeals is reversed, and the case is remanded to the Court of Appeals for further proceedings.