RENDERED: DECEMBER 19, 2024
TO BE PUBLISHED

# Supreme Court of Kentucky

2023-SC-0337-DG

JOHN EDWARD ANDERSON                                      APPELLANT

                      ON REVIEW FROM COURT OF APPEALS
V.                               NO. 2021-CA-0692
           HICKMAN CIRCUIT COURT NOS. 19-M-00052 & 20-XX-0003

COMMONWEALTH OF KENTUCKY                             APPELLEE

**OPINION OF THE COURT BY JUSTICE CONLEY**

**<u>REVERSING AND REMANDING</u>**

This case is before us upon discretionary review after the Court of Appeals concluded the Fugitive Disentitlement Doctrine (FDD) applied to John Anderson, resulting in the dismissal of his appeal before that court which was, crucially, also a matter of discretionary review. Another crucial fact is that the merits panel of the Court of Appeals that dismissed his suit countermanded the ruling of the motion panel which had granted discretionary review despite the FDD being put squarely before it. Anderson had surrendered himself to custody prior to the motion panel granting discretionary review. Thus, this case requires us to determine whether an Appellant who absconds from custody prior to seeking discretionary review in the Court of Appeals, can subsequently surrender himself to the government, thereby insulating a discretionary appeal from being dismissed based on the FDD. We hold, under the facts of this case,

that he may. Therefore, we reverse the Court of Appeals and remand to that court for consideration of the merits of Anderson's appeal.

## I.     Facts

On August 17, 2020, John Anderson was convicted of failing to make a required disposition of property in the Hickman District Court. He failed to appear for sentencing. He was sentenced to 180 days in jail, with 60 days to serve, two years' probation, and a $208 fine. Anderson was ordered to report to jail on August 28, 2020. He failed to report. A bench warrant was issued but recalled after a show cause hearing. Anderson was ordered to report to jail on September 14, 2020, with a warrant to be effective the following day if he failed again to report. Anderson failed to report to jail. Anderson's lawyer timely filed an appeal to the Hickman Circuit Court.[1] Despite Anderson's fugitive status, and no attempt by the Commonwealth to invoke the FDD, the Circuit Court undertook the appeal and affirmed his conviction on May 18, 2021.

Anderson's counsel sought a motion for discretionary review before the Court of Appeals. Anderson remained a fugitive at that time. On September 13, 2021, the Commonwealth filed a response to the motion and urged the Court of Appeals to apply the FDD and deny discretionary review. Anderson then surrendered himself to the custody of the Commonwealth. On November 30,

---

[1] To offer as much clarity as possible, this appeal to the Hickman Circuit Court constituted Anderson's matter of right of appeal under Ky. Const. § 115. *See also* KRS 23A.080(1), stating "[a] direct appeal may be taken from District Court to Circuit Court from any final action of the District Court." Although we ultimately conclude the Court of Appeals erred in misapplying the FDD in this case, that error does not amount to a deprivation of Anderson's constitutional right to appeal since he had no such right before the Court of Appeals.

2021, the motion panel granted discretionary review, ruling that this Court's decision in *Commonwealth v. Hess*, 628 S.W.3d 56 (Ky. 2021) did not apply. The motion panel reasoned that *Hess* involved a fugitive who remained at large and was awaiting a favorable outcome in the Court of Appeals before surrendering to custody. *Id.* at 59. Anderson, on the other hand, surrendered to custody before the Court of Appeals had even ruled on the issue of whether to accept jurisdiction.[2]

Before the merits panel, the Commonwealth once again urged application of the FDD. The merits panel was persuaded. The Court of Appeals reasoned that the "interlocutory order [granting discretionary review] disregarded the fact that Anderson sought the benefit of discretionary review while a fugitive from the legal system. Consequently, the FDD applies and dismissal is within our discretion." Quoting *Hess*, the merits panel concluded Anderson's case was a "perfect example of when the FDD should be applied," and "exactly what the FDD intended to prevent." *Id.* at 59. Anderson sought discretionary review in this Court which we granted.

## II.     Standard of Review

We must clarify the standard of review as Anderson contends application of the FDD is a conclusion of law reviewed *de novo*, while the Commonwealth

---

[2] It is likely that Anderson has completed his sentence at this point in time. We do not, however, believe this case is moot because "the expiration of a criminal sentence has been held not to moot an appeal from the judgment of conviction, because there remain consequences of the conviction . . . deemed sufficient to keep alive the appellant's personal stake in the outcome of the appeal." *Morgan v. Getter*, 441 S.W.3d 94, 99 (Ky. 2014).

contends application of the FDD is discretionary therefore subject to an abuse of discretion standard. We agree with Anderson. It is true that application of the FDD has been called "discretionary." *Hess*, 628 S.W.3d at 60. But this overlooks the fact that application of the FDD is dependent upon an assessment of facts and their legal consequences. "[I]f a determination is made by processes of legal reasoning from, or of interpretation of the legal significance of, the evidentiary facts, it is a conclusion of law." *Schultz v. Gen. Elec. Healthcare Fin. Serv. Inc.*, 360 S.W.3d 171, 175 (Ky. 2012) (quoting *Poyner v. Lear Siegler, Inc.,* 542 F.2d 955, 959 (6th Cir. 1976)). An appellate court looks to whether the appellant has in fact absconded custody; when he absconded; whether he remains a fugitive; if not, was his return to custody voluntary or involuntary; the nature of the proceeding (criminal or civil, as well as the legal claims); and the nexus between the appellant's status and the appeal itself. These unequivocally involve a legal conclusion on the significance of evidentiary facts. *Id.* But just as well, several prudential concerns such as enforceability of judgment; judicial administration; dignity of the court; deterrence; and simply the magnitude of punishment, are also used to determine whether the FDD applies. It is to these latter considerations that the term "discretionary" is properly referred to, but only because such considerations defy bright-line rules; they guide a decision but do not fix it.

The Supreme Court of the United States has exercised review over these prudential concerns and channeled them. *Ortega-Rodriguez v. United States*, 507 U.S. 234, 244-50 (1993); *Degen v. United States*, 517 U.S. 820, 825 (1996).

4

Neither of those cases mention giving deference to the lower court opinion being reviewed. In fact, the Supreme Court explicitly stated that review of application of the FDD is not to occur on a case-by-case basis which is a hallmark of issues calling for an abuse of discretion standard. *Ortega-Rodriguez*, 507 U.S. at 250 n. 23. Instead, the Supreme Court stated that "dismissal of fugitive appeals is always discretionary, [only] in the sense that fugitivity does not 'strip the case of its character as an adjudicable [sic] case or controversy[.]'" *Id.* (quoting *Molinaro v. New Jersey,* 396 U.S. 365, 366 (1970)). Thus, we conclude the question of whether the FDD applies is properly reviewed *de novo* as a question of law.

**III.  Analysis**

Anderson has written that the FDD "is largely rooted in federal law." Untrue. The FDD is rooted in the "inherent authority" of the judiciary "to protect their proceedings and judgments in the course of discharging their traditional responsibilities." *Degen*, 517 U.S at 823. The first application of the doctrine in Kentucky in fact preceded by two years' its first application by the Supreme Court of the United States. *Wilson v. Commonwealth,* 73 Ky. 526 (1874); *Smith v. United States*, 94 U.S. 97 (1876). Nonetheless, the same concerns and factors operate in both judicial systems thus federal precedent is persuasive authority.

That said, we find it worth noting that the Supreme Court in *Smith* did dismiss an appeal based on the FDD but also stated it would not enforce that ruling if "the plaintiff in error submit himself to the jurisdiction of the court

5

below on or before the first day of our next term, the cause be left off the docket after that time." *Smith*, 94 U.S. at 98. Thus, at the very inception of the doctrine in the federal judiciary there is an acknowledgment that a voluntary surrender to custody could negate application of the FDD. The *Wilson* decision contained no similar caveat, but unquestionably the appellant in that case remained "at large." *Wilson*, 73 Ky. at 526. In *Crum v. Commonwealth*, the Court did explicitly allow the appellant an opportunity to surrender to custody before finalizing its dismissal—"the appeal [is] dismissed, with the right of the appellant to surrender himself and make application within six months from this date for a reinstatement thereof[.]" 23 S.W.2d 550, 550 (Ky. 1930).

*Crum* offers valuable guidance to the scenario at issue here. In that case, the Court held the general rule is "[t]he escape of defendant from custody after conviction deprives him of the benefit of a review, and whether he escapes before or pending his appeal it may be dismissed on motion, unless he surrenders himself *before the matter is determined* or within a time fixed by the Court." *Id.* (internal quotation omitted) (emphasis added). It also said, "the order of dismissal [should not be] final until the accused has had an opportunity to surrender himself to the proper custody and submit to the jurisdiction of the Court." *Id.* (internal quotation omitted). Finally, it explained that

> the better rule, as stated in the two texts supra, [is] to fix a reasonable time within which appellant may surrender himself and make application for a reinstatement of the appeal, to be determined by the court from the evidence heard thereon in the exercise of a sound discretion.

6

*Id.*[3] We see no reason to depart from a rule that has been firmly in place for close to a hundred years and has arguably existed since the inception of the FDD. Although *Crum* seems to be controlling on this issue, it is not since it only holds that time ought to be allowed for an absconder to submit to custody before a dismissal is enforced. We cite it only to demonstrate that the law has never been so rigid in its approach as to utterly foreclose penitence. Like the father to the prodigal son, the law demands obedience and will leave the one who flees from him and remains outside his countenance to suffer the consequences—that is the purpose of the FDD. But should the fugitive return in a reasonable time and submit to the jurisdiction of the court, then he is welcomed back, and he will be judged with equity and right judgment.

The Court of Appeals thought otherwise and, relying significantly upon *Hess*, ruled that because Anderson was a fugitive when he sought the benefit of discretionary review, the FDD applied and dismissed his appeal. To the contrary, the rule of *Hess* is nothing more than when an appellant absconds and remains at large then application of the FDD is appropriate. *Hess*, 628 S.W.3d at 59. In *Hess*, the appellant had absconded and was "waiting to see how this Court rules on her appeal to decide whether to make herself available to the authority of the court and the law." *Id.* She absconded *after* her case was before the Court of Appeals. *Id.* We held such a circumstance is "exactly what

---

[3] Once again, we see an opinion invoking the "sound discretion" of the court making the determination of whether the FDD applies. But it must be remembered that at the time *Crum* was rendered, there was no intermediate court of appeal in Kentucky. The Court was referring to its own discretion.

the FDD [is] intended to prevent." *Id.; see also Casebolt v. Butler*, 194 S.W. 305, 306-08 (Ky. 1917) (affirming that an appellant in either a criminal or civil case who absconds from the jurisdiction of the court in disobedience of a court order, and remains outside that jurisdiction so as not to be amenable to processes were the appeal decided against him, has forfeited his right of appeal).

Significantly, however, the question of applying the FDD in *Hess* was also "inextricably intertwined with the incorrect conclusion of law that Hess had a constitutional right to appeal." *Hess*, 628 S.W.3d at 59. Because the Court of Appeals had erred on the constitutional question, it subsequently erred in not applying the FDD. *Id.* The present case is factually distinguishable and presents a different legal question than *Hess*, so it is not controlling. Anderson did abscond from the District Court and Circuit Court but subsequently surrendered. Anderson remained at large when his counsel filed a motion for discretionary review with the Court of Appeals. In response, the Commonwealth asked the court to invoke the FDD and deny the motion. Anderson surrendered to custody *after* the Commonwealth filed its response but *before* the motion panel ruled on his motion. He did not abscond after that. Finally, there is no constitutional question presented by applying or not applying the FDD.

With these facts in mind, we undertake a review of the prudential concerns identified in *Ortega-Rodriguez*, 507 U.S. at 244-50, as they apply to this case. First, enforceability of the court's judgment is not implicated. A

8

fugitive at large is not "in a condition in which he could be compelled to submit to our decision, if against him, [therefore] he ought not to be allowed to have the benefit of the decision if it was in his favor[.]" *Norton v. Commonwealth*, 78 Ky. 501, 501 (1880). Anderson manifestly is not in such a condition and the Court of Appeals' decision, whether for or against him, would be enforceable because he returned to custody. Nor do we see how the efficient administration of justice is enhanced by application of the FDD in this circumstance. Because Anderson submitted to custody prior to the court ruling on his motion for discretionary review, his former fugitive status could not and did not have any impact on that court to properly conduct an appeal. Equally as important, if the Court of Appeals rules in favor of Anderson, then he, being in custody, can be returned to the jurisdiction of the trial court and the trial court may conduct itself accordingly.

Neither are concerns over dignity implicated here. Although Anderson was a fugitive when his motion for discretionary review was filed, at that point the Court of Appeals had not asserted jurisdiction and Anderson returned to custody once the FDD doctrine had been invoked by the Commonwealth prior to the assertion of jurisdiction. That is not the act of one flouting the dignity of the Court of Appeals. Relatedly, the Supreme Court of the United States has made clear that in the federal judiciary, the FDD may not be invoked by an appellate court to protect the dignity of the district courts. *Ortega-Rodriguez*, 507 U.S. at 246. In *Ortega-Rodriguez*, the appellant's fugitive status was entirely confined to the time in which his case was pending before the federal

9

district court. *Id.* Thus, the Supreme Court held it was for the district court to protect its own dignity. *Id.* Allowing an appellate court to invoke the FDD to vindicate the district court would go too far and potentially "allow an appellate court to sanction by dismissal any conduct that exhibited disrespect for any aspect of the judicial system, even where such conduct has no connection to the course of appellate proceedings." *Id.*

We find this rationale persuasive. Anderson was a fugitive during the pendency of his matter-of-right appeal before the Hickman Circuit Court. It was to that court that his actions expressed contempt and disregard, and thus, for that court to vindicate its own dignity and prerogatives.[4] The Commonwealth, however, did not ask that court to invoke the FDD and dismiss his appeal. Once the FDD was first asserted before the Court of Appeals, Anderson submitted to custody. Again, this is difficult to characterize as contempt and disregard for the dignity of the Court of Appeals.

Finally, the deterrence consideration is also not implicated here. The Supreme Court has said, "[o]nce jurisdiction has vested in the appellate court . . . then any deterrent to escape must flow from appellate consequences, and dismissal may be an appropriate sanction by which to deter." *Id.* at 247. In other words, invoking the FDD in the Court of Appeals must sustain the Court

---

[4] We are aware that the Court of Appeals has held the FDD cannot be invoked to dismiss a matter of right appeal guaranteed by Ky. Const. § 115. *Warfield v. Commonwealth*, No. 2021-CA-1404-MR, 2023 WL 2718970, at *3 (Ky. Ct. App. Mar. 31, 2023), review granted (June 7, 2023). But we have since ordered that decision to be depublished and is now non-binding authority. *Commonwealth v. Warfield*, 2023-SC-0188, (Ky. Oct. 24, 2024). This Court awaits an appropriate case to determine whether the FDD can constitutionally be applied in a matter of right appeal.

10

of Appeals' purpose and function, and discourage fleeing whilst in that court's jurisdiction. If Anderson had remained a fugitive, then application of the FDD would have been relatively straight-forward; but the specter of the FDD in the Court of Appeals served its purpose here—it brought Anderson back into custody peaceably. Given that occurrence, dismissal in the Court of Appeals is not appropriate. As the Seventh Circuit has observed, "it is not at all clear that it [the FDD] should be invoked in a case like this, where the party in question is no longer a fugitive . . . . In cases where escaped fugitives have been recaptured, courts have been reluctant to impose the severe sanction of disentitling them to access to the federal courts." *Gutierrez-Almazan v. Gonzales*, 453 F.3d 956, 957 (7th Cir. 2006). This is particularly true here, where the Court of Appeals' ruling will send a message to the criminal appellate bar that if their client absconds and remain at large, the FDD will apply; but if their client surrenders to custody prior to the Court of Appeals accepting jurisdiction, the FDD will still apply. Such a rule will tend to convince absconders that they have nothing to gain by resubmission to custody. It would hinder the judicial process by foreclosing review of alleged trial court errors; and contribute to the danger inherent in law enforcement trying to apprehend fugitives who may be convinced they have nothing left to lose.[5] Thus, dismissal here is a punishment that does not "fit the crime" because Anderson showed no similar contempt for the Court of Appeals as he did to the

---

[5] We grant that Anderson likely did not feel this way since he was sentenced to 180 days in prison, with only 60 days to serve. But, then again, he absconded—he did it for *some* reason. We are speaking to the precedential effect of the Court of Appeals' ruling and not to Anderson specifically.

11

Circuit Court, nor did his fugitive status frustrate or hinder orderly judicial administration within the Court of Appeals.

Finally, the Court of Appeals mentioned that Anderson having been a fugitive for more than a year was good reason to apply the FDD. The Supreme Court has recognized that "that a long escape, even if ended before sentencing and appeal, may so delay the onset of appellate proceedings that the Government would be prejudiced in locating witnesses and presenting evidence at retrial after a successful appeal." *Ortega-Rodriguez*, 507 U.S. at 249. But Anderson was convicted for unlawful disposition of property, and the Court of Appeals did not cite how his one year at large had led to any destruction of evidence, loss of witnesses against Anderson, or how the government would be prejudiced in the event of remand to the trial court. *See United States v. Morgan*, 254 F.3d 424, 427 (2nd Cir. 2001) (six-year duration of fugitive status, during which time key government witness was lost, justified applying FDD because of prejudice to government although Appellant had surrendered to custody). The Commonwealth has similarly failed in its brief to this Court to identify how it would be prejudiced in the event Anderson is successful on appeal. Therefore, we conclude as a matter of law that application of the FDD in the circumstance presented by this case is incorrect and reverse the Court of Appeals.

### IV.    Conclusion

Anderson's case presents fundamentally different facts from those in *Hess*. Our application of the FDD in *Hess* concerned an appellant who had absconded after the Court of Appeals had asserted jurisdiction in her case and refused to resubmit herself to custody; and the Court of Appeals' refusal to apply that doctrine in *Hess* concerned a mistaken legal judgment that Hess had a constitutional right to appeal. None of those facts are present here. The FDD is not a hammer; it is, to borrow from President Theodore Roosevelt, the judiciary's way of speaking softly and carrying a big stick. The "big stick" loomed over Anderson's appeal, and in response he submitted himself to custody. While other cases may present factors that would still justify applying the FDD even in the event of resubmission to custody, there are no such circumstances identified by the Commonwealth in this case. Thus, we hold the Court of Appeals erred in applying the FDD to Anderson's discretionarily granted appeal. We remand back to the Court of Appeals for consideration of the merits of Anderson's appeal.

All sitting. All concur.

COUNSEL FOR APPELLANT:

Adam Meyer
Assistant Public Advocate
Department of Public Advocacy


COUNSEL FOR APPELLEE:

Russell M. Coleman
Attorney General of Kentucky

Shawn D. Chapman
Deputy Solicitor General

J. Grant Burdette
Assistant Solicitor General